540 So.2d 674 (1988)
MISSISSIPPI VALLEY TITLE INSURANCE COMPANY
v.
Bernard S. MALKOVE, et al.
86-806.
Supreme Court of Alabama.
September 30, 1988.
Rehearing Denied March 10, 1989.
*675 Larry O'Neil Putt of Smyer, White, Taylor & Putt, Birmingham, for appellant.
Maury Friedlander, Fred Ray Lybrand and Clifford C. Sharpe, Mobile, for appellees.
ADAMS, Justice.
The Court's original opinion in this case, dated June 3, 1988, is withdrawn and the following opinion is substituted therefor:
This appeal arises from a dispute over the intended coverage of a title insurance policy. The plaintiffs, Bernard S. Malkove, Melvin J. Malkove, George M. Forwood, and Ted Forwood (hereinafter the "Malkoves" and the "Forwoods"), sued the defendant, Mississippi Valley Title Insurance Company (hereinafter "Mississippi Valley"), to recover under a title insurance policy and also for fraud and bad faith failure to pay the insurance claim. The fraud claim was ultimately dismissed. Following an ore tenus hearing, the trial court found in favor of the insureds on all the other claims. We affirm in part and reverse in part.
The Malkoves' complaint is premised on two title insurance policies issued by Mississippi Valley. The policies insured the title to two separate tracts of land in Oxford, Alabama, which we will refer to as "Tract A" and "Tract B." Tract A was originally conveyed to the Malkoves and Herman Maisel by the Crow-Brighton Company on December 2, 1982. Subsequently, Mr. Maisel conveyed his interest in Tract A to the Malkoves, and the Malkoves obtained a title insurance policy through Mississippi Valley. Policy Number Z-081575 was issued in the amount of $150,000.00 to the named insureds: "Melvin J. Malkove, a married man, and Bernard S. Malkove, a single man." The policy insured against loss by reason of:
"1. Title to the estate or interest described in Schedule A being vested otherwise than as stated herein;
"2. Any defect in or lien or encumbrance on such title; or
"3. Lack of a right of access to and from the land."
On September 21, 1983, the Malkoves formed a partnership with the Forwoods under the name Magna Investments Partnership. On September 23, 1983, the Malkoves conveyed Tract A to Magna Investments Partnership, by warranty deed. The title insurance policy (Z-081575) was not modified to add insureds or change the named insureds.
On August 16, 1983, the Malkoves purchased the property referred to as Tract B from Tom Stinson and Donald L. Soleman, for $125,000.00. On August 17, 1983, the Malkoves conveyed Tract B by warranty deed to Bernard S. Malkove, Melvin J. Malkove, George M. Forwood, and Ted Forwood (as individuals), subject to a mortgage to SouthTrust Bank of Calhoun County.
On September 12, 1983, Mississippi Valley issued policy number Z-126931 in the amount of $125,000.00 to insure the title to Tract B. There is a dispute over who the named insureds were in that policy. Both parties agree that Melvin S. Malkove and Bernard Malkove were named; however, they disagree over whether the Forwoods were included in the policy.
Schedule A of the policy, dated September 12, 1983, states:
"2. Name of Insured: Melvin Malkove and Bernard S. Malkove
"3. Fee Simple title to the land insured hereby is vested in: Melvin Malkove, Bernard S. Malkove, George Forwood and Ted Forwood
"4. Instruments creating the estate or interest in the real estate which is hereby insured are described as follows:
"Deed executed from Tom Stinson and wife, Judy Stinson, and Donald Soleman and wife, Betty Soleman to Melvin Malkove and Bernard Malkove dated August 16, 1983 and filed for record in the Probate Office, Calhoun County, Alabama in Book 1587, Page 406 on August 17, 1983 at 2:33 P.M."
An endorsement to the policy, dated the same day as the policy, states:
"The above described binder is hereby amended in the following respects:

*676 "Deed executed by Bernard Malkove, a single man, and Melvin Malkove and wife, Barbara Malkove to Bernard S. Malkove, Melvin J. Malkove, George M. Forwood, and Ted Forwood dated August 16, 1983 and filed for record in the Probate Office, Calhoun County, Alabama at Book 1587, Page 404 on August 17, 1983 at 2:35 P.M."[1]
Subject to certain exceptions and exclusions specified in Schedule B, this policy insured against loss for the same reasons noted in policy number Z-081575.
Subsequent to the execution of each of these title insurance policies, the Malkoves and the Forwoods discovered that a restrictive covenant applied to both Tract A and Tract B. The covenant, which was identical for each tract, stated that the subject property could "not be used for a fast food, hamburger oriented restaurant for a period of twenty (20) years." Mississippi Valley had failed to note this encumbrance on the property and, therefore, did not include the covenant as an exclusion from coverage in Schedule B in the title insurance policy for Tract A or Tract B.
Upon discovering the restrictive covenant on Tract A and on Tract B, the Malkoves and the Forwoods made claims to Mississippi Valley under Policy Number Z-081575 for $150,000.00, and under Policy Number Z-126931 for $125,000.00. The claims, which were filed on January 14, 1985, were based on the alleged reduction in the value of the property due to the restrictive covenants. It is undisputed that upon receiving the claim on approximately January 23, 1985, Mississippi Valley immediately began attempting to contact McDonald's Corporation[2] to determine if the restrictive covenant could be released.[3] Although Mississippi Valley was initially unsuccessful in its attempts to contact the proper person in McDonald's Corporation, Mississippi Valley informed the insureds of its actions at regular intervals. The Malkoves and the Forwoods were anxious to receive a definitive answer from Mississippi Valley, because they had a prospective buyer for the property, but Mississippi Valley told them that a release could take some time.
On approximately April 30, 1985, Mississippi Valley was informed that McDonald's Corporation refused to release the covenant. On the advice of counsel, Mississippi Valley immediately filed an action for a declaratory judgment in circuit court; it asked the court for an interpretation of the restrictive covenant, a determination of the status of all the parties involved, and the amount of damages, if any.
McDonald's Corporation answered the complaint, and the Malkoves and the Forwoods answered and filed a counterclaim. Subsequently, the trial court dismissed, with prejudice, McDonald's Corporation as a defendant. The court also dismissed, with prejudice, Mississippi Valley's claim against the Malkoves and the Forwoods. The court realigned the parties, making the Malkoves and the Forwoods the plaintiffs, and Mississippi Valley the Defendant.
The case was heard without a jury on December 1, 1986. At the close of the Malkoves' and the Forwoods' case, Mississippi Valley moved for a directed verdict on all issues. The court directed a verdict on the fraud claim, but denied the motion as to all the other claims. At the conclusion of all the evidence, Mississippi Valley moved again for a directed verdict, which the trial court denied. The trial court entered a judgment for the Malkoves and the Forwoods and against Mississippi Valley in the amount of $100,000.00. Mississippi Valley appeals from that judgment.
The following issues are raised on appeal:
1. Did the conveyance of Tract A by the Malkoves to the partnership, Magna Investment Partnership, of which the Malkoves *677 were partners, terminate the Malkoves' interest or estate in the land?
2. Were the Forwoods insured under policy number Z-126931, and if not, did the trial court err in awarding damages to the Forwoods?
3. Did the trial court err in awarding damages to the Malkoves pursuant to policy number Z-126931?
4. Did the trial court err in finding that Mississippi Valley was liable to the Malkoves and the Forwoods for bad faith failure to pay the insurance claim?

I.
Mississippi Valley asserts that the conveyance of Tract A from the Malkoves, as individuals, to the partnership, terminated the Malkoves' estate or interest in Tract A; therefore, it says, title insurance policy number Z-081575 was terminated at the time the property was transferred. We disagree.
To address this issue, we must refer to the Alabama Partnership Act, Ala.Code, 1975 § 10-8-1 et seq., which states in pertinent part:
"(a) Property, whether real or personal, is presumed to be partnership property where:
"(1) It is included as such in the agreement of partnership; or
"(2) It is acquired in the partnership name.

"(b) Property is presumed to be partnership property if it is purchased with partnership funds even though the title or other interest is acquired in the name of an individual partner or partners."
Section 10-8-70. (Emphasis added.) Furthermore, § 10-8-71 sets forth the property rights of partners as follows:
"The property rights of a partner are:
"(1) His rights in specific partnership property;
"(2) His interest in the partnership; and
"(3) His right to participate in the management. (Acts 1971, No. 1513, p. 2609, § 24.)"
Section 10-8-71. Finally, § 10-8-72 specifies the interest of partners in partnership property:
"(a) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.
"(b) The incidents of this tenancy are such that:
"(1) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes, but he has no right to possess such property for any other purpose without the consent of his partners.
"(2) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.
"(3) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt, the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.
"(4) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.
"(5) A partner';s right in specific partnership property is not subject to dower, curtesy, homestead rights or allowances to widows, heirs or next of kin. (Acts 1971, No. 1513, p. 2609, § 25.)"
Section 10-8-72.
When the Malkoves purchased the title insurance policy, they were the record titleholders *678 of Tract A and they were the named insureds on the insurance policy. The policy covered the Malkoves as long as they maintained an interest or an estate in the insured tract of land. Because the Malkoves were the sole legal title holders as to Tract A at the time they purchased the title insurance policy, they certainly had an estate or interest in Tract A at that point. It was not until approximately six months after they obtained the title insurance policy that the Malkoves conveyed the land to Magna Investments Partnership, of which they were partners.
Mississippi Valley asserts that the nature of an individual's interest in a tenancy in partnership is one of personal property rather than real property; therefore, it says the Malkoves' interest or estate in the land was terminated and Mississippi Valley's title insurance policy was no longer applicable. We disagree.
When the property was conveyed to the partnership, the nature of the Malkoves' estate or interest in the land changed, but the Malkoves still maintained an estate or interest in Tract A. Prior to the conveyance, the Malkove brothers were tenants in common. After the conveyance to the partnership, the Malkoves were tenants in partnership with the Forwoods. See § 10-8-72. The incidents of this tenancy are set forth in § 10-8-72(b) and clearly give the partners an estate or interest in the real property.
For the foregoing reasons, we conclude that the Malkoves were entitled to recover damages, if any, for the decrease in the value of Tract A; therefore, to this extent, the judgment of the trial court is due to be affirmed.

II.
The next issue relates solely to Tract B and title insurance policy number Z-126931. Mississippi Valley asserts that, as a matter of law, the claims of the Forwoods relating to Tract B were due to be involuntarily dismissed. Specifically, Mississippi Valley argues that the Forwoods were not named insureds on the title insurance policy and therefore they were not entitled to any form of recovery. We agree insofar as their claim relates to Tract B.
The Malkoves and the Forwoods admit that the Forwoods were not included in Schedule A of policy number Z-126931. However, they claim that the endorsement that was executed the same day as the policy was intended to add the Forwoods as named insureds under the policy. A reading of both Schedule A and the endorsement does not support the Malkoves' and the Forwoods' argument. Schedule A clearly states that the named insureds are "Bernard S. Malkove and Melvin J. Malkove." Under the section of Schedule A reading "[i]nstruments creating the estate or interest in the real estate which is hereby insured are described as follows," there is a description of the conveyance from Tom Stinson and Donald Soleman to the Malkoves. We conclude that the endorsement to the policy, which the Forwoods claim was intended to add them as named insureds, simply changed the legal description of the conveyance creating the insureds' interest or estate in the land. Although the Forwoods' names were in the endorsement, the endorsement was clearly not intended to add them as additional insureds to the policy; rather, its purpose was to correct the description of the instrument creating the estate or interest in the land. Our conclusion is further supported by the fact that Schedule A specified that the named insureds were the Malkoves, but it acknowledged that title to the land was vested in both the Malkoves and the Forwoods. In other words, at the time the policy was issued, the Forwoods had title to Tract B. If they had been intended to be named insureds, it is unlikely that the policy would have noted that the Forwoods held title to the land without also placing their names under the category entitled "name of insureds."
For the foregoing reasons, we conclude that the trial court erred in awarding damages to the Forwoods under the terms of the title insurance policy insuring Tract B.
*679 The Forwoods were not named insureds,[4] and, therefore, they were not entitled to recover anything directly from Mississippi Valley.[5] Insofar as the judgment awarded damages to the Forwoods, it is due to be reversed.

III.
The third issue also relates solely to Tract B and policy number Z-126931. Mississippi Valley asserts that the trial court erred in awarding damages to the Malkoves as to Tract B because there was no proof of actual loss and because the preponderance of the evidence was in favor of the defendant. Mississippi Valley notes that the only evidence presented showing that there was a reduction in the value of the land as a result of the restrictive covenant was testimony by Bernard Malkove and Ted Forwood, plaintiffs herein. Bernard Malkove testified that the land value decreased in value from $5.00 per square foot without the restriction, to $2.00 per square foot with the restriction. Ted Forwood testified that the land decreased in value from $5.50 per square foot to $2.50 per square foot. Mississippi Valley asserts that Mr. Malkove and Mr. Forwood were not qualified to testify, that there was no basis for their testimony, and that, because their testimony was inconsistent, it was not reliable.
On the other hand, Mississippi Valley argues, its testimony was from an unbiased, qualified expert, who testified that there was no change in the value of the land as a result of the restrictive covenant because the land was not suitable for a "fast food, hamburger oriented restaurant." Therefore, Mississippi Valley claims, the trial court erred because the "preponderance" of the credible evidence was in its favor.
As to Mississippi Valley's claim that Bernard Malkove and Ted Forwood were not qualified to testify as to the value of the land with and without the restrictive covenant, we note the following rule:
"It is the rule in Alabama that any person, including a layman, is competent to testify as to his opinion concerning the value of land if he has had an opportunity for forming a correct opinion and testifies in substance that he has done so. State v. Steele, Ala., 374 So.2d 325 (1979); State v. Woodham, 292 Ala. 363, 294 So.2d 740 (1974). Further, the competency of a witness is a question addressed to the discretion of the trial judge, and his decision will not be reversed in the absence of an abuse of that discretion. Whetstone v. Caudle 54 Ala. App. 299, 307 So.2d 697 (1975)."
Calvin Reid Cosnt. Co., Inc. v. Coleman, 397 So.2d 145 (Ala.Civ.App.1981): In addition, Ala.Code 1975, § 12-21-114, states in pertinent part:
"Direct testimony as to the market value is in the nature of opinion evidence; one need not be an expert or dealer in the article, but may testify as to value if he has had an opportunity for forming a correct opinion. (Code 1907, § 3960; Code 1923, § 7656; Code 1940, T. 7, § 367.)"
Ted Forwood has been a licensed real estate broker in this state for 25 years. In addition, he owns property in Oxford, Alabama (where Tract B is located), and he has participated in commercial developments in Oxford. Bernard Malkove has been a licensed real estate broker in Alabama since 1977 and has been in the business of developing, investing, and selling commercial real estate in the southeast. He became familiar with the value of property in Oxford through his efforts to assist clients looking for property in that area.
There was sufficient evidence for the trial court to conclude that Mr. Malkove and mr. Forwood were experts in real estate, or in the alternative, that they were non-experts who had had an opportunity to *680 form a correct opinion as to the value of Tract B. This Court will not reverse the trial court's decision to allow this testimony unless there has been a clear abuse of discretion. See Burroughs Corp v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982); Crosslin v. Crosslin, 494 So.2d 431 (Ala. Civ.App.1986). Finding no evidence that the trial court abused its discretion, we must affirm its decision to permit the testimony.
Even assuming the trial court correctly allowed the testimony, Mississippi Valley argues, the trial court's decision to award $100,000.00 in damages was not supported by a "preponderance" of the evidence and should, therefore, be reversed. We disagree.
The issue of damages was tried ore tenus and without a jury. As the factfinder, the trial court was in the best position to evaluate the weight and credibility of the testimony. There is a presumption of correctness attached to the judge's findings based on an ore tenus hearing, which can be overcome only if the findings are plainly and palpably contrary to the weight of the credible evidence. Securitronics of America, Inc. v. Bruno's, 414 So.2d 950, 951 (Ala.1982). (The test is not whether the verdict is supported by the preponderance of the evidence, as Mississippi Valley suggests; rather, it is whether the verdict goes against the great weight and preponderance of the evidence.) We find no basis for concluding that the trial court's verdict "was plainly and palpably erroneous and manifestly unjust," id.; therefore, we must affirm as to the award of damages.

IV.
The final issue is whether the trial court erred in finding that Mississippi Valley was guilty of bad faith failure to pay the insurance claim. Although we conclude that the trial judge erred in not entering an involuntary dismissal of this claim pursuant to Rule 41(b), Ala.R.Civ.P., we conclude that that error was harmless, inasmuch as other theories in the plaintiffs' case were viable. The principles of Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981), do not apply in a non-jury setting.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED. ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED.
ALMON, BEATTY, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., concurs in the result.
TORBERT, C.J., and SHORES, J., dissent.
TORBERT, Chief Justice (dissenting).
Because the majority of the Court today fails to acknowledge two related principles of partnership law, I must respectfully dissent. These two principles, each to be developed fully below, are, first, that a partner has only rights, not an interest, in specific partnership property, and, second, that the entity theory of partnership law must be employed in resolving this case.
As to Tract A, the Malkoves purchased that property as individuals, and purchased title insurance against any encumbrances on the property. Tract A was subsequently conveyed to Magna Investment Partnership, a partnership comprised of the Malkoves and the Forwoods. There arises a presumption that Tract A is thus partnership property. Code 1975, § 10-8-70(a)(2). The inquiry must now focus on whether the title insurance followed the conveyance; if it did not, Mississippi Valley would be entitled to judgment as a matter of law on any claim relating to its failure to pay proceeds as a result of the encumbrance discovered on Tract A. The policy insuring the title to Tract A was effective only so long as the Malkoves retained an estate or interest in that property. The majority concludes that because, after the conveyance of Tract A to the partnership, the Malkoves were tenants in partnership, they clearly retained an interest or estate.
Section 10-8-71, Code 1975, provides:
"The property rights of a partner are:
"(1) His rights in specific partnership property;
"(2) His interest in the partnership; and

*681 "(3) His right to participate in the management."
(Emphasis added.) Tract A was specific partnership property in which the Malkoves had rights, not an interest. The only interest the Malkoves had was derivatively held through their ownership of the partnership as a whole, as an undivided and indivisible entity. They did not have the estate or interest necessary to support their claim against Mississippi Valley.
This premise derives from the theory of partnership law properly applied in this context. At least once prior to the Court's present decision a court of this state has recognized that "Alabama does recognize a partnership as a legal entity for some purposes [including] buying and selling property." Ford v. Mitcham, 53 Ala.App. 102, 105, 298 So.2d 34 (Ala.Civ.App.1974). That court continued by saying that the Alabama Partnership Act required application of the entity concept in some circumstances. Id. In an effort to elucidate and bolster what the Ford court said in passing, I will recount the thoughts of several very learned scholars and apply the words of the Act itself in explaining my conclusion that the applicable legal entity theory forecloses our affirming the judgment of the court below.
In maintaining that the rights or interests of partners incidental to partnership property were governed by the entity, or mercantile, theory, one commentator analyzed the "six heads [of] ownership of the partner as limited by the [Uniform Partnership] Act": the right to possess, the right to use, the right to the produce, the right to waste, the right of disposition, and the right to exclude others' usage. Crane, The Uniform Partnership Act: A Criticism, 28 Harv.L.Rev. 762, 772-73 (1915). The author correctly concluded that each right belonged to the partnership as a distinct entity, rather than to any single partner. Cf. Code 1975, § 10-8-72(b)(1) (partner's only possessory right to partnership property is for partnership purposes, thus derived from the partnership entity); Code 1975, § 10-8-70(e) (partnership may acquire property; obviously, thus acquired, the partnership may use such property); Code 1975, § 10-8-70 (if the property is that of the partnership, so must be the produce of the property); Code 1975, § 10-8-70(a), (b), and (e) (if partnership may acquire and use, it may waste); Code 1975, § 10-8-73 (property held in partnership name may be disposed of only in partnership name); Code 1975, § 10-8-72(b)(1) (partner may not wrongfully exclude another partner from use of partnership property). The drafter of the original Uniform Partnership Act, William Draper Lewis, states that although the Act was drawn in general conformity "with the aggregate theory, the provisions relating to partnership property essentially mirror the concepts of the entity theory. Lewis, The Uniform Partnership ActA Reply to Mr. Crane's Criticism, 29 Harv.L.Rev. 158, 181-85 (1915); see also Crane & Bromberg, Law of Partnership 244 (1968); 1 Rowley on Partnerships 557 (2d ed. 1960). In other words, each individual partner may enjoy the use and possession of partnership property, as a partner, in common with his copartners; he has no personal interest in any of the collective property owned by the partnership entity, however. Code 1975, § 10-8-71(1), (2); Rowley on Partnerships, supra, at 559; Law of Partnership, supra, at 228-31.
Lending further support to the applicability of the entity theory to the case before us are the facts that a partner may not assign his right to specific partnership property constituting less than his entire interest, Code 1975, § 10-8-72(b)(2), and that the partner's right in specific partnership property is not subject to attachment or execution, except and unless upon a claim against the partnership as an entity. Code 1975, § 10-8-72(b)(3). Why? "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." Code 1975, § 10-8-40. The interest does not extend to the property that produces the profits and surplus; the property is held by a distinct entitythe partnership itself. As stated in Rowley on Partnerships, supra, at 561 (citation omitted):
*682 "`The title to partnership property is not in the individual members of the firm so that [any] may assign or transfer to another an undivided share in any specific articles, but it is in the firm as an entirety, subject to the right of the partners to have it applied to the debts of the firm and the equities of the partners.'"
The sole interest a partner has is his interest in the partnership itself, not in specific partnership property; partnership property is intact as a whole for the purposes of the partnership and its creditors.
Finally, a mortgage on partnership realty by one partner is not a mortgage on that partner's undivided interest in the realty, but of his interest in that mortgaged property that attaches after the payment of debts and the settlement of partnership accounts. The mortgage, then, is available only after the debts are paid and the accounts discharged. It will not affect the interests of the other partners, but will attach, for purposes of title or liens in favor of creditors, only to the interest of the partner who gave the mortgage. Rowley on Partnerships, supra, at 562-63; 2 Barrett & Seago, Partners and Partnerships: Law and Taxation ch. 12, § 4.3 (1956).
Returning to the case at bar, it is quite obvious that Tract A became specific partnership property when conveyed by the Malkoves to the partnership. Upon that conveyance, any interest or estate formerly held by the Malkoves in Tract A was extinguished; it is of no matter that the Malkoves were partners in the transferee partnership. All interest in Tract A was conveyed to the partnership, leaving the Malkoves, as individuals, with mere rights in the property derivative from the partnership's holdings. In my opinion, these mere derivative rights are simply inadequate to support a finding of Mississippi Valley's liability.
My other predominant problem with the majority's holding that the Malkoves are entitled to damages for the decrease in value of Tract A is that it begs a question which has, to my knowledge, no answer either in precedent or logic. "A partner who takes out a policy in his own name may find his recoverable loss limited to his proportional interest in the firm property, however that is calculated." Law of Partnership, supra, at 214. Here, the Malkoves were not even partners when the title insurance to Tract A was secured. Even dismissing that, what amount of damages is recoverable by the Malkoves, and how is that amount calculated?
For example, if the decrease in Tract A's value was $100, should the Malkoves, who purchased the insurance and who constitute one-half of the partnership, receive $50 in damages? This seems less than fair, because the insurance policy insured against encumbrances to the title to Tract A; therefore, if an encumbrance is discovered, the entire $100 should be paid. From Mississippi Valley's perspective, this is not fair either; the entire amount would overcompensate the Malkoves, because their rights to Tract A have been halved (presumably) by their conveyance of the subject property to the partnership. In this manner, the partnership derives the benefit of the surplus, despite the fact that neither it, nor the Forwoods, were either parties to or intended beneficiaries of the Malkove-Mississippi Valley insurance contract. Or is the latter, the full $100, appropriate because, despite dividing the ownership, the Malkoves did nothing to affect the materiality of the risk? I can divine no satisfactorily workable manner in which to resolve these questions. As stated above, however, I believe the questions are unnecessarily prompted by the majority's misapplication of the aggregate theory of partnership.
Because I can not join the majority's affirmance as to parts I and III, I would reverse the entire judgment of the trial court and render judgment in favor of Mississippi Valley. This case sets foreboding precedent in an important but little construed area of Alabama law.
SHORES, J., concurs.
NOTES
[1] We note that the page numbers and times are also different, but they are not at issue on appeal.
[2] McDonald's Corporation was a prior owner of Tract A and Tract B.
[3] Mississippi Valley had the option of either paying damages or obtaining a release from the restrictive covenant.
[4] The parties agree that the Forwoods were not named insureds under the policy insuring Tract A; therefore, that is not an issue on appeal.
[5] This does not negate the possibility that Mississippi Valley might be required to defend the Malkoves in a claim by the Forwards against the Malkoves for the reduction in the value of the land due to the restrictive covenant.