[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 806 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 807 
Jacqueline Hinson appeals from a judgment of the Elmore County Circuit Court awarding damages and costs to Dwaine Holt, as father and next friend of his minor son Dustin Holt, on his claims arising from Hinson's corporal punishment of Dustin at Southside Middle School in Tallassee. We affirm.
Holt originally sued Hinson in her individual capacity and in her official capacity as an employee of "Tallassee City Schools";[1] he also named "Tallassee City Schools" and Superintendent Glen Baggett as defendants. In his complaint, Holt asserted claims of assault and battery, intentional infliction of emotional distress, and negligence. Hinson, Baggett, and "Tallassee City Schools" answered the complaint, pleading, among other things, the "schoolmaster's defense" and discretionary-function immunity. After discovery had taken place, and the case had been set for a nonjury trial, the defendants filed a motion for a summary judgment, supported by excerpts from deposition transcripts. Holt responded by filing a response in opposition, supported by deposition excerpts and the affidavits of Dustin and his aunt, Melanie Garner. The trial court entered a summary judgment in favor of "Tallassee City Schools" and Superintendent Baggett, and directed the entry of a final judgment as to those defendants; that judgment was not appealed. However, the trial court denied the summary judgment motion as to Hinson, concluding that there were genuine issues of material fact concerning whether Hinson's conduct had violated the corporal punishment policy of the Tallassee city school system and whether she had acted willfully, maliciously, or in bad faith so as to bar a claim of discretionary- function immunity.
The case proceeded to trial as to the claims against Hinson alone. During a two-day ore tenus proceeding, the trial court denied Hinson's motions, purportedly *Page 808 
made pursuant to Rule 50, Ala.R.Civ.P.,[2] for a judgment as a matter of law at the close of Holt's evidence and at the close of all the evidence. At the close of proceedings, the trial court entered a judgment in favor of Holt for $5,000 plus costs of court. On Holt's motion, the trial court subsequently taxed the costs of several depositions to Hinson.
Our standard of review of the trial court's judgment, entered after an ore tenus proceeding, is settled:
 "[W]here evidence has been presented orally, a presumption of correctness attends the trial court's conclusion on issues of fact, if these conclusions were based totally or in part on oral testimony. This Court will not disturb the trial court's conclusions unless they are clearly erroneous and against the great weight of the evidence."
First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415, 425
(Ala.), cert. denied, 461 U.S. 938 (1983). Additionally, we note that "[i]n ore tenus proceedings the trial court is the sole judge of the facts and of the credibility of witnesses," and "we are required to review the evidence in a light most favorable to the prevailing party," that is, Holt. Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App. 1993); see also First Health, Inc. v. Blanton, 585 So.2d 1331, 1332 (Ala. 1991) (reviewing evidence in the light most favorable to the prevailing party where the trial court's judgment was entered after an ore tenus proceeding).
 I. Facts
Southside Middle School, where Dustin attended eighth-grade classes in the 1995-96 school term, is a part of the Tallassee city school system. In 1992, the Tallassee City Board of Education adopted the following policy concerning corporal punishment of its students:
 "Reasonable corporal punishment may be administered after consultation with the principal, and only in the presence of another professional staff member. Reasonable corporal punishment shall be administered only as a last resort in the most unusual circumstances and after reasonable corrective measures have been used without success. "A staff member may, however, use reasonable force against a pupil without advance notice to the principal when it is essential for self-defense, the preservation of order, or for the protection of other persons or the property of the Board."
In addition to this policy, the Tallassee City Board of Education's Code of Conduct, applicable during the 1995-96 school year, placed various student acts into four classes of offenses for disciplinary purposes. Class I offenses included "Use of profane or obscene language not directed toward another person"; Class II offenses included "Threats" and "Use of profane or obscene language or gestures." For Class I offenses, the Code of Conduct listed the following "minimum consequences": for a first offense, a teacher conference with student; for a second offense, a parental contact by the teacher; and for a third offense, office referral, parental contact and student counseling, as well as possible corporal punishment. "Minimum consequences" for Class II offenses included an office referral, a parental conference, a suspension from school, or an in-school suspension of one to three days.
On Friday, September 1, 1995, the fifth day of the 1995-96 school term at Southside Middle School, 13-year-old Dustin reported to his first period eighth-grade physical education class, which was under the direction of a substitute teacher that day. After playing football outdoors during the period, the boys' physical education *Page 809 
class returned to the gymnasium, along with the girls' class (which was under Hinson's direction), to change clothes for their next instructional period. As the students walked towards the gym, one student behind Dustin said to another "I will kick your ass." Immediately after that remark was made, Dustin turned around and saw the students behind him laughing. When another student asked Dustin what had been said, Dustin repeated the remark he had overheard; he did not do so in a threatening manner.
Hinson turned around as Dustin uttered the remark, and upon hearing it directed him to "see her at the top of the hill." She then instructed Dustin to dress and to come to a stage inside the gymnasium. Dustin dressed and reported to the stage, and Hinson sent for Coach Bruce Wayne Dean; she informed Coach Dean that she was inflicting corporal punishment on Dustin because he had used profanity. Hinson did not send for, or otherwise consult, the principal of Southside, Ron McDaniel. Moreover, Dustin's disciplinary records show that he had committed no offenses under the Code of Conduct before September 1, 1995.
When Dustin reported to the stage, Hinson directed him to hold onto the top of a chair. Hinson then picked up a wooden paddle that contained holes on that portion of the paddle designed to make contact with a punishee's buttocks, and struck Dustin three times. Three is considered by Tallassee school personnel to be the normal maximum number of blows a student should receive. The force of the third blow was sufficiently strong to cause the chair Dustin was grasping to slide several inches across the stage.
After receiving Hinson's blows, Dustin was in such pain that he was unable to sit through his remaining classes. On the next day, a Saturday, Dustin lay on his stomach, and there is testimony that he could not engage in normal activities. When Dustin's aunt examined his buttocks, she was so shocked by the deep, eggplant-sized black bruises Dustin had received that she and Dustin drove to the home of her employer, a circuit judge from an adjacent county, who examined the bruises with his wife and contacted McDaniel. Dustin was then taken to Tallassee Community Hospital's emergency room for medical treatment,[3]
and Dustin's aunt completed a child-abuse incident report. Even on the next school day, which was four days after Hinson's punishment of Dustin, Dustin was still in pain, and his father wrote a note to his teachers asking that they excuse him from being seated in class.
On appeal, Hinson asserts that the judgment is flawed because it is general in nature; she also asserts the applicability of various common-law and statutory immunities from liability, and she contends that the trial court erred in taxing the costs of various depositions to her after she filed her notice of appeal.
 II. The Nature of the Judgment
Holt's complaint asserted three counts against Hinson in her individual capacity and in her capacity as an employee of "Tallassee City Schools"; he also named "Tallassee City Schools" and the city superintendent of schools as defendants. However, the trial court entered a summary judgment in favor of "Tallassee City Schools" and the superintendent, and that judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P. Thus, Hinson was the sole defendant remaining in the case at the time of trial.
Hinson contends that the judgment is flawed because, she says, she was entitled to a judgment as a matter of law as to all claims in her "official capacity," i.e., in her capacity as an employee of the "Tallassee City Schools," and the judgment, she says, does not indicate whether it was entered on the official-capacity *Page 810 
claims or on the individual-capacity claims. However, in making this argument Hinson neglects to consider the effect of the trial court's summary judgment in favor of "Tallassee City Schools," i.e., the Tallassee City Board of Education,[4] Hinson's employer. "Claims against officers in their official capacity are `functionally equivalent' to claims against the entity they represent." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1403
(M.D.Ala. 1998); see also Monell v. Department of Social Servs.,436 U.S. 658, 690 n. 55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Here, because the trial court had already entered a final judgment in favor of the entity Hinson was alleged to represent in her official capacity, i.e., "Tallassee City Schools," we conclude that the trial court's subsequent judgment in favor of Holt on his claims against Hinson applied as a matter of law to Hinson in her individual capacity only. Any error in the trial court's failing to delineate in which capacity Hinson was liable was, therefore, under the circumstances of this case, harmless error not affecting Hinson's substantial rights. Rule 45, Ala.R.App.P.
Hinson further argues that the judgment is flawed because, she contends, she was entitled to a judgment as a matter of law on Holt's claims of intentional infliction of emotional distress. However, the transcribed remarks of the trial court made when it entered its judgment refer to caselaw discussing assault and battery, and it is apparent that its judgment is based upon Holt's assault-and-battery claim and not upon his other claims. Even assuming, however, that the intentional-infliction-of- emotional-distress count was not viable, or was a "bad count," the presence of another, viable claim in the case would be sufficient to render harmless any error in failing to enter a judgment on the intentional-infliction claim:
 "Although we conclude that the trial judge erred in not entering an involuntary dismissal of [a] claim pursuant to Rule 41(b), Ala.R.Civ.P.,[5] we conclude that that error was harmless, inasmuch as other theories in the plaintiffs' case were viable. The principles of Aspinwall v. Gowens, 405 So.2d 134
(Ala. 1981), do not apply in a non-jury setting."
Mississippi Valley Title Ins. Co. v. Malkove, 540 So.2d 674, 680
(Ala. 1988). Thus, to determine whether this error was harmless, we must consider whether the trial court's judgment was consistent with the applicable law concerning assault and battery.
 III. Scholastic Discipline and Assault and Battery
At common law, "any touching by one person of the person of another in rudeness or in anger is an assault and battery." Seigel v. Long,169 Ala. 79, 82, 53 So. 753, 754 (1910); see also Surrency v. Harbison,489 So.2d 1097, 1104 (Ala. 1986). However, the Alabama Supreme Court has recognized a qualified privilege for an educator's discipline of a student. In Suits v. Glover, 260 Ala. 449, 71 So.2d 49 (1954), the court affirmed a judgment on a jury verdict in favor of a schoolmaster on his pupil's assault-and- battery claims because evidence in that case justified such a verdict. The Suits court noted the following applicable principles of law:
 "A schoolmaster is regarded as standing in loco parentis and has the authority to administer moderate correction to pupils under his care. To be guilty of an assault and battery, the teacher must not only inflict on the child immoderate chastisement, but he must do so with legal malice or wicked motives or he must inflict some permanent injury. In *Page 811 
determining the reasonableness of the punishment or the extent of malice, proper matters for consideration are the instrument used and the nature of the offense committed by the child, the age and physical condition of the child, and the other attendant circumstances."
260 Ala. at 450, 71 So.2d at 50. Suits has been cited in recent Alabama appellate cases with favor. See Deal v. Hill, 619 So.2d 1347, 1349 (Ala. 1993); State Dep't of Human Resources v. Funk, 651 So.2d 12, 18
(Ala.Civ.App. 1994).
Seizing upon the court's use, in Suits, of the term in loco parentis (that is, "in the place of a parent"), Hinson contends that she is entitled to blanket parental immunity. Under Alabama law, "[t]he parental immunity doctrine prohibits all civil suits brought by unemancipated minor children against their parents for the torts of their parents." Mitchell v. Davis, 598 So.2d 801, 803 (Ala. 1992). Only one exception to this rule has emerged — when a child alleges sexual abuse by a parent, the parental immunity doctrine will not bar an action against the parent, although proof of the alleged conduct must be tested under a "clear and convincing" standard. Hurst v. Capitell, 539 So.2d 264, 266
(Ala. 1989).
However, even assuming that an educator can claim some form of parental immunity, we note that the Alabama Supreme Court has never held the parental-immunity doctrine to be applicable in its pure form to nonparents. For example, Suits imposes a higher quantum of proof upon a student who seeks to hold a teacher liable on an assault-and-battery claim arising from corporal punishment, because teachers stand in loco parentis; but it does not equate the status of teachers to that of parents under the parental-liability doctrine. More recently, in Mitchell, foster parents (who, like the schoolmaster in Suits, are not legal parents, but act in loco parentis) were held to be entitled only to a "qualified form" of parental immunity from actions by their foster children, that is, immunity "against claims of simple negligence brought by foster children in their care." Mitchell, 592 So.2d at 806 (emphasis added). Thus, if Hinson were entitled to parental immunity at all, it would be limited to claims based upon simple negligence; she would have no immunity from liability with respect to claims based upon alleged intentional torts such as assault and battery. Hinson's claim of parental immunity is therefore no more and no less availing than her reliance upon the educator's privilege enunciated in Suits.
Neither are we persuaded that Hinson is immune from liability for assault and battery under the doctrine of discretionary-function immunity applicable to state employees, although that doctrine has been held to apply to employees of city boards of education. See L.S.B. v. Howard,659 So.2d 43, 44 (Ala. 1995). Such immunity "protects a State agent from liability for negligence or wantonness while performing discretionary functions." L.S.B., 659 So.2d at 44. There was considerable dispute concerning Hinson's discretion, under the policy of the Tallassee City Board of Education and the Code of Conduct, to inflict corporal punishment upon Dustin for a single use of the word "ass."
More importantly, however, even if Hinson acted within her discretion in deciding to use a paddle to punish Dustin, the manner of her punishment is not necessarily immunized, because "a state officer or employee is not protected under the doctrine of discretionary function immunity if he acts willfully, maliciously, fraudulently, or in bad faith." Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996) (emphasis added; holding that fact question precluded judgment as a matter of law for state trooper on arrestee's assault-and-battery claim when evidence showed that trooper used excessive and illegal force in making arrest). Thus, a showing of legal malice on the part of an educator with respect to the infliction of corporal punishment will not only defeat the privilege enunciated in *Page 812 Suits — it will also overcome any substantive immunity arising from the performance of a discretionary function.
Legal malice may be defined as "the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent." Empiregas, Inc. v. Feely, 524 So.2d 626, 628 (Ala. 1988). Moreover, malice is generally a fact issue; "the existence of malice being a fact which in the nature of things is incapable of positive, direct proof, it must of necessity be rested on inferences and deductions from facts" that can be presented to the trier of fact. National Sec. Fire Cas. Co. v. Bowen, 447 So.2d 133, 140 (Ala. 1983).
There was sufficient evidence from which the trial court could have concluded that Hinson acted maliciously in corporally punishing Dustin. First, according to the policy of the Tallassee City Board of Education, corporal punishment is not to be administered except "as a last resort in the most unusual circumstances and after reasonable corrective measures have been used without success" (emphasis added). In this case, Dustin was immediately subjected to the maximum corporal punishment for uttering the word "ass" on the fifth day of school. There is no evidence that Dustin had a previous record of such offenses; further, Hinson made no attempt to consult with the principal before inflicting the punishment, and Hinson made no other attempt to correct Dustin before resorting to corporal punishment. Thus, the trial court could have concluded from the evidence that Hinson's infliction of corporal punishment was in direct contravention of the policies of the Tallassee City Board of Education.[6]
Also, in determining the reasonableness of the punishment and the extent of malice, the trier of fact may consider the nature of the offense committed by the student, the age and physical condition of the student, and other attendant circumstances. Suits, 260 Ala. at 450,71 So.2d at 50. Here, the evidence reveals that a physical education instructor inflicted three blows to the buttocks of a 13-year-old for using the word "ass," a word that amounts to, at most, a mildly profane reference to the human hindquarters.[7] Taken together, the blows Hinson inflicted on September 1, 1995, were so severe that Dustin developed large, shocking bruises on his buttocks and was unable to sit down in class for the remainder of that school day or the next school day, four days later. In particular, the third of the blows inflicted by Hinson was so severe that the chair Dustin was holding was sent several inches across the stage.
Under the applicable standard of review, we must view this evidence, and the evidence of the Tallassee City Board of Education's policy of reserving the use of corporal punishment as a last resort under unusual circumstances, in a light most favorable to Holt. Driver v. Hice, 618 So.2d at 131. Applying this principle, we conclude that the evidence in this case was sufficient to support the trial court's finding that Hinson acted with legal malice in punishing Dustin. Under Suits and the other authorities cited above, such malice will support a finding of liability with respect to an assault-and-battery claim against an state-employed educator. Thus, we conclude that the trial court's judgment in favor of Holt is neither clearly *Page 813 
erroneous nor against the great weight of the evidence.
In reaching this conclusion, we are aware of Hinson's contention that student discipline is a constant concern in modern society, and we note her citation to current opinion-polling data tending to indicate that corporal punishment is deemed by many Alabama citizens to be a proper means of correcting errant behavior of students in the schools of this state. However, the framers of Alabama's Constitution envisioned that the government of this state would be "a government of laws and not of men." Ala. Const. 1901, § 43. Regardless of the outcome of today's (or tomorrow's) opinion polls, the power of an educator to discipline an errant student must, at some point, yield to the legally protected liberty interests of that student. Cf. Ingraham v. Wright, 430 U.S. 651
(1977) (state common-law constraints and remedies with respect to corporal punishment held to satisfy Fourteenth Amendment procedural due process concerns). That point has been determined by the Alabama Supreme Court to be when punishment becomes immoderate and malicious. See Suits,260 Ala. at 450, 71 So.2d at 50. As an intermediate appellate court, we are not free to move that point (see § 12-3-16, Ala. Code 1975), nor are we free to disregard the findings of a learned trial judge whose province it was to weigh the evidence and to assess the credibility of the witnesses in this case.
 IV. Taxation of deposition costs
Finally, Hinson contends that when she filed her notice of appeal, the trial court lost jurisdiction to tax the costs of several depositions to her. However, even after an appeal is taken, the trial court may proceed in matters that are entirely collateral to that part of the case that is appealed. E.g., Biddy v. Biddy, 284 Ala. 68, 79, 222 So.2d 162, 172
(1969). Because "[t]he assessment of costs is merely incidental to the judgment and may be done at any time prior to issuance of execution," Littleton v. Gold Kist, Inc., 480 So.2d 1236, 1238 (Ala.Civ.App. 1985), we conclude that a motion for costs pursuant to Rule 54(d), Ala.R.Civ.P., may properly be ruled upon by the trial court at any time before the issuance of execution, regardless of the pendency of an appeal. Accord, Buchanan v. Stanships, Inc., 485 U.S. 265, 268 (1988) (a request for costs under Rule 54(d), Fed.R.Civ.P., "raises issues wholly collateral to the judgment in the main cause of action.").
"[T]axation of costs under Rule 54(d), Ala.R.Civ.P., rests in the discretion of the trial judge, whose decision will not be reversed unless a clear abuse of discretion is shown." Garrett v. Whatley, 694 So.2d 1390,1391 (Ala.Civ.App. 1997) (citing Vulcan Oil Co. v. Gorman, 434 So.2d 760,762 (Ala. 1983)). In this case, Holt requested, among other things, that the cost of 12 depositions ($5,119) be taxed to Hinson; after Hinson objected to the taxation of these costs, the trial court entered an order taxing the cost of five of the depositions (or $4,821) to Hinson on the basis that they "were necessary for use in defending against [Hinson's] Motion for Summary Judgment." The Alabama Supreme Court has held that the taxation of costs of depositions not used at trial is within the discretion of the trial court, Ex parte Strickland, 401 So.2d 33, 34
(Ala. 1981), and Hinson has not demonstrated an abuse of that discretion so as to warrant correction by this court.
 V. Conclusion
Based upon the foregoing facts and authorities, the trial court's judgment in favor of Holt is affirmed.
AFFIRMED.
Yates and Monroe, JJ., concur.
Crawley and Thompson, JJ., concur in the result.
[1] We interpret "Tallassee City Schools" to be equivalent to Tallassee's "city board of education," as constituted under § 16- 11-1 et seq., Ala. Code 1975.
[2] Because the trial court was the factfinder in this case, these motions were, in effect, motions for a judgment on partial findings pursuant to Rule 52(c), Ala.R.Civ.P., which supplanted, in nonjury trials, the "involuntary dismissal" procedure set forth in Rule 41(b), Ala.R.Civ.P. See Rule 52, Ala.R.Civ.P., committee comment.
[3] An attending nurse at the emergency room testified that she had treated victims of assault and abuse, but had never seen bruises "quite like" Dustin's.
[4] See note 1, supra.
[5] Now a judgment on partial findings pursuant to Rule 52(c), Ala.R.Civ.P. See note 1, supra.
[6] Such a finding would, as a matter of law, render inapplicable § 16-28A-1, Ala. Code 1975, which confers civil and criminal immunity with respect to school discipline "[s]o long as teachers follow approved policy in the exercise of their responsibility to maintain discipline in the classroom" (emphasis added).
[7] A number of Alabama appellate opinions have quoted the word "ass" while deleting stronger instances of profanity. E.g., Wright, 682 So.2d at 2 (quoting state trooper); Mosley v. City of Auburn, 428 So.2d 165,166 (Ala.Crim.App. 1982) (quoting defendant). *Page 814