JOSEPH RUTKOWSKI, by His Guardian ad Litem, MARIANA R. WASKO, Appellant, *v.* MICHAEL WASKO, Respondent.

Third Department, July 7, 1955.

*Michael LeSawyer* for appellant.

*Paul F. Donohue* for respondent.

ZELLER, J. During the evening of September 21, 1951, the infant plaintiff, who was then thirteen years of age, accompanied his stepfather, the defendant herein, on a shopping trip to Hudson. On the way back to the farm where they resided, the defendant's automobile, which he was operating, left the high-way and struck a tree and the infant plaintiff was injured. This action was instituted to recover money damages for his personal injuries. Upon the trial, the infant plaintiff was questioned concerning his relations with his stepfather. He told of his own father's death when he was six years of age and his mother's marriage to the defendant three years later. He testified that

he then commenced to reside with the defendant in New York City where both his mother and stepfather were employed and that each contributed to the expenses of the household until early in 1951 when his mother gave birth to a child and ceased working. He further testified that in August, 1951, the defendant moved the members of his household to a farm in Columbia County and that income was derived from the farm. He admitted that he called the defendant "father", that the defendant on occasions told him what to do and that he obeyed, and that when he needed money for school purposes he received it from the defendant.

The only issues submitted to the jury were the usual ones of negligence, contributory negligence and damages. After the jury returned a verdict in favor of the infant plaintiff, the Trial Judge, on motion of the defendant, set the verdict aside and dismissed the complaint on the merits upon the ground that the defendant stood *in loco parentis* to the infant plaintiff and that no action for ordinary negligence could be maintained against him. After judgment was entered upon the order of the Trial Judge, this appeal was taken.

In this State, it is well recognized that an unemancipated infant is barred from maintaining an action against his natural parent for damages for personal injuries arising from ordinary negligence. (*Cannon* v. *Cannon*, 287 N. Y. 425; *Sorrentino* v. *Sorrentino*, 248 N. Y. 626; *Siembab* v. *Siembab*, 284 App. Div. 652; *Epstein* v. *Epstein*, 283 App. Div. 855; *Ciani* v. *Ciani*, 127 Misc. 304.) Similar immunity is granted by a majority of the other States. (*Owens* v. *Auto Mut. Ind. Co.*, 235 Ala. 9; *Rambo* v. *Rambo*, 195 Ark. 832; *Trudell* v. *Leatherby*, 212 Cal. 678; *Mesite* v. *Kirchenstein*, 109 Conn. 77; *Elias* v. *Collins*, 237 Mich. 175; *Redding* v. *Redding*, 235 N. C. 638; *Matarese* v. *Matarese*, 47 R. I. 131; *McKelvey* v. *McKelvey*, 111 Tenn. 388; *Cowgill* v. *Boock*, 189 Ore. 282; *Roller* v. *Roller*, 37 Wash. 242.) The reasons for the rule have been variously expressed. In *Cannon* v. *Cannon* (*supra*, pp. 428, 429) it was said: "We know that family unity is not created by law. But, as we have seen, the law does not fail to recognize family unity as a factor in human conduct and relationship * * *. Indeed, if within the wide scope of daily experiences common to the upbringing of a child a parent may be subjected to a suit for damages for each failure to exercise care commensurate with the risk — for each injury caused by inattention, unwise choice or even selfishness — a new and heavy burden will be added to parenthood." A Rhode Island court in *Matarese* v. *Matarese* (*supra*, p. 133) expressed

the reasons as follows: "Any proceeding tending to bring discord into the family and disorganize its government may well be regarded as contrary to the common law, and not to be sanctioned by the courts. Such conflict would arise by recognizing the right of a minor child to bring his personal action against the father to recover damages for torts alleged to have been committed by the father in the course of the family relation and resulting in personal injury to the child." In *London Guar. & Acc. Co.* v. *Smith* (64 N. W. 2d 781, 784) it was stated: "The proclaimed basis of the rule is that sound public policy forbids such actions as being inimical to the preservation of domestic tranquility and parental discipline."

The rule and the proclaimed reasons for it have been effectively criticized by respectable authorities. (See, Prosser on Torts, § 99, pp. 905–908 and McCurdy on Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030.) In *Rozell* v. *Rozell* (281 N. Y. 106, 113) the Court of Appeals held that a negligence action could be maintained by an unemancipated brother against his unemancipated sister. In that case Judge RIPPEY, writing for a unanimous court, used these words which adequately summarize the criticisms directed at the parental nonliability rule: "Legalistic doctrines and ancient traditions like those of identity of husband and wife and family unity between parent and child and other members of the household * * * as affecting the question of the propriety for allowing suit for personal injuries by one against another are and have been vanishing with the advent of modern means of transportation and the spread of insurance against liability of the wrongdoer and protection for the sufferer. We cannot bury our heads in the sand and ignore the new tendencies and conditions so notorious. Insurance as protection to the sufferer is now a matter of common knowledge." However, as was said in *Epstein* v. *Epstein* (283 App. Div. 855, *supra*), " In the absence of statute or decision of our Court of Appeals limiting the general rule, an action for personal injuries resulting from negligence may not be maintained against a parent by an unemancipated minor child."

The continued existence of the rule and the reasons advanced for it constrain us to hold that a stepparent genuinely standing *in loco parentis* may have immunity from suits for nonwillful negligence by a minor stepchild. If family unity will be shattered and domestic tranquility disturbed, if a heavy burden will be added to parenthood and parental discipline weakened by permitting litigation between parent and child, the same condi-

tions will result if an infant member of the family be permitted to sue a stepparent who genuinely stands *in loco parentis*. No good reason appears why the rule should be applied in the case of a parent and not in the case of one standing completely *in loco parentis*. If the foundations for its application are sound in the one instance, they must be equally so in the other, and there is no justification for refusing to apply it to a stepparent who actually exercises all the parental prerogatives and who discharges all the parental obligations.

Our conclusion that the immunity granted a parent for nonwillful negligence extends to one *in loco parentis* is in accord with the weight of authority outside of New York State. (67 C. J. S., Parent & Child, § 61, subd. b, par. [2]; *London Guar. & Acc. Co.* v. *Smith,* 64 N. W. 2d 781, *supra; Trudell* v. *Leatherby,* 212 Cal. 678, *supra.*)

A stepfather does not merely by reason of such relationship acquire a parental status. *In loco parentis* refers to a person who has fully put himself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations. A stepfather who furnishes a bed and provides bread for a minor son of his wife by a former marriage and who exercises some control over him does not, by those acts alone, establish a parental relationship. To establish such a relationship there must be in addition to those factors, an affinity whereby the stepfather has a true interest in the well-being and general welfare of his stepson. The assumption of the parental relationship is largely a question of intention which should not lightly or hastily be inferred, but which may be shown by the acts and declarations of the person alleged to stand in that relation. (*Miller* v. *United States,* 123 F. 2d 715, 717; *Leyerly* v. *United States,* 162 F. 2d 79.) Whether the relationship exists in any particular case will depend on all the facts and circumstances involved. (*Niewiadomski* v. *United States,* 159 F. 2d 683; *Matter of Lutz,* 201 Misc. 539.) The relationship should be found to exist only if the facts and circumstances show that the stepparent *means* to take the place of the lawful father not only in providing support but also with reference to the natural father's office of educating and instructing and caring for the general welfare of the child. Whether a stepfather with whom a minor resides stands *in loco parentis* is generally a question of fact to be resolved in the same manner as other factual problems arising in common-law actions. Where the evidence on the issue is in conflict **or where** different inferences may reasonably be drawn from

the evidence, the issue should not be resolved as a matter of law.

The only evidence bearing upon the relationship existing between the defendant and the infant plaintiff was elicited from the latter and has been summarized above. In that evidence there is some proof of support and control but it contains nothing which compels an inference that the defendant had a full and complete parental interest in the well-being and general welfare of the infant plaintiff. Therefore, the triers of the facts could have found from the evidence in this record that the defendant did not stand *in loco parentis* to the infant plaintiff. Under such circumstances, it was error to hold as a matter of law that an *in loco parentis* relationship existed.

The judgment and order should be reversed, on the law and facts, and a new trial ordered.

FOSTER, P. J., BERGAN, HALPERN and IMRIE, JJ., concur.

Judgment and order reversed, on the law and facts, and a new trial ordered, with costs to the appellant to abide the event.