779 A.2d 963

Leo G. MOLOCK, Sr., et al.

v.

DORCHESTER COUNTY FAMILY YMCA, INC.

No. 2539, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Aug. 30, 2001.

Jonathan C. Dailey (Dailey & Associates, on the brief), Washington, DC, for appellants.

Scott D. Goetsch (Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before SALMON, SONNER, and JOHN F. McAULIFFE (Ret., Specially Assigned), JJ.

SALMON, Judge.

On April 3, 1998, between 6 and 9 p.m., the Dorchester County Family YMCA ("YMCA") held a Friday night roller skating event, which was billed: "Skate with the Easter Bunny Healthy Kids Night." The event combined "Family Night" events with the normal skating that usually occurred on Friday nights at the YMCA. The skating was supervised by a skate monitor, a YMCA program director, and others, including a volunteer who, dressed as the Easter Bunny, skated among the children. Some parents of the children also sat in the bleachers surrounding the skating area. In the hallway and rooms adjacent to the gymnasium, other Family Night activities took place such as crafts, face painting, and gymnastics. Information booths manned by representatives from various civic organizations were also present. Approximately three hundred people were in attendance.

Around 8 p.m., the skate monitor, a YMCA volunteer named Vince Vigneri, was told by a teenager that "someone is going to bank my cousin." Mr. Vigneri correctly understood the verb "bank" as meaning "beat up." Mr. Vigneri did not ask who was going to beat up whom; he simply told his informant to stay inside the gymnasium where there was supervision. Mr. Vigneri also told the program director, Frieda Dietrich, that there was a rumor that a fight was going to take place. Ms. Dietrich, in turn, told the front desk clerk, Angie Major, to ask the police to come for a "sweep through" at 8:50 p.m., so that there would be additional adult supervision when the event ended.

About 8:50 p.m., fifteen-year-old Leo Molock, Jr. ("Molock"), got in a fight in the YMCA parking lot with Leroy McKnight ("McKnight"), age fourteen. The fight did not go well for McKnight. After blows were struck, McKnight walked away from Molock, took a pocket knife from his cousin and returned to where Molock was standing. McKnight then stabbed Molock, who died from his stab wounds.

Appellants, who are the parents of Molock, filed a complaint in the Circuit Court for Dorchester County against the

YMCA. At trial, the plaintiffs produced evidence that, if believed, showed that the YMCA did not use reasonable care in supervising activities on their premises. On the other hand, the YMCA produced countervailing evidence showing that they did use reasonable care under the circumstances.

The trial judge's jury instructions included the following:

Now, this is a case brought in negligence. It is the [p]laintiff's burden to prove that the [d]efendant was negligent and the negligence produced the injury that is complained of. Now, negligence is doing something that a person using ordinary care would not do or failing to do something that a person using ordinary care would do. So, the measure and the thing you must look for is ordinary care. That's the burden. If a person fails to do it then the burden [sic] is negligent.

So, you're looking at ordinary care, and you'll hear counsel argue to you about ordinary care and what they believe constitutes ordinary care in this case. *And ordinary care simply means that amount of caution, attention or skill that a reasonable person would use under similar circumstances.* That is the important measure you're talking about, the duty, a reasonable person, not the smartest person in the world or the least intelligent but a reasonable person. And we're held and the [d]efendant in this case is held to that kind of care, *which a reasonable person would use under similar circumstances.*

\* \* \*

Now, we're talking here, the [d]efendant was at the YMCA, and the YMCA operated this business, if I may call it that. And by operating that enterprise assumed certain responsibilities to people who are there. And the liability of YMCA depends on the nature of the people who were there. And I would instruct you, under the law in this case, those who were there at the invitation of YMCA are what we call invitees. And an invitee is a person who is invited or permitted to be on another's property for the purposes related to the owner's or occupant's business. In this case

[t]he [c]ourt instructs you that Molock, young Molock, and the others there were invitees of YMCA.

And the duty that is owed to an invitee *is to use reasonable care to see that those portions of the property which the invitee may be expected to use are safe.* I'll repeat that. The duty owed to an invitee is to use reasonable care to see that those portions of the property which the invitee may be expected to use[ ] are safe. And that's the basis—the duty that you must consider in determining whether there was a breach of that duty.

(Emphasis added.)

Once the trial judge concluded his instructions, counsel for the plaintiffs put on the record his exceptions to the instructions. The only exception that is here relevant was:

[W]e sought an instruction on [*loco*] *parentis* involving special relationship, the special relationship between the child and an organization like the YMCA which we believe the analogous [sic] to that of a school and a pupil, which requires a special instruction pursuant to the special instruction filed in this case. That's all, Your Honor.

The instruction to which plaintiffs' counsel referred was the following:

The relation of the YMCA to its members who are children is analogous to one who stands *in loco parentis,* with the result that the YMCA is under a *special duty to exercise reasonable care to protect its members who are children from harm.*

(Footnote omitted) (emphasis added). Henceforth, we shall refer to this instruction as the "*in loco parentis*" instruction.

The trial judge declined to give the requested instruction. After being given a special verdict form, the jury retired to deliberate.

The first question on the verdict form was, "Do you find that the [d]efendant was negligent and that its negligence was a proximate cause of the death of Leo Molock, Jr.?" The jury answered "no" to the first question and concluded their delib-

erations. After judgment was entered in favor of the YMCA, the Molocks filed this timely appeal. In the question presented portion of their brief, they raise one question, *viz:*

> Whether the [circuit court] erred in instructing the jury that the YMCA's duty to nearly 300 teenagers attending its Friday night skating event was only to see that those portions of the premises to which the invitees may be expected to use were safe and not to prevent foreseeable harm?

■ Appellants ask us to consider whether the instruction *actually given* by the trial judge—as opposed to the *in loco parentis* instruction that was rejected—was erroneous. This is made clear by appellants' argument, *viz:*

> The [circuit] [c]ourt erred in instructing the jury that the duty of the YMCA was limited to seeing that those portions of the premises which the invitee may be expected to use were safe; the YMCA had a special duty to protect the teenagers from foreseeable harm.[1]

According to appellants,

> This instruction is inapposite to the evidence in the case[,] which demonstrated that the YMCA, an organization nearly identical in social features to a school, invited nearly three hundred teenagers to a Friday evening social event and assumed the responsibilities for their safety beyond simply keeping safe those portions of the premises that the children might be expected to use.

The foregoing argument was not preserved for appellate review because appellants made no objection to the instructions actually given in the trial court.

Maryland Rule 2–520(e) reads:

---

1. Appellants slightly changed their argument in another part of their brief when they said that the trial judge erred when he told the jury that "the duty that is owed to an invitee is to use *reasonable* care to see that those portions of the property to which the invitee may be expected to use are safe." (Emphasis added.)

**Objections.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

Although not listed as a question presented, appellants do raise a second question, *viz:*

Did the trial court err in rejecting their *in loco parentis* instruction?

That question was properly raised below.

In *Farley v. Allstate Ins. Co.,* 355 Md. 34, 733 A.2d 1014 (1999), the Court of Appeals said:

In reviewing the propriety of a trial court's denial of a requested jury instruction, we must examine "whether the requested instruction was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given."

*Id.* at 47, 733 A.2d 1014 (quoting *Wegad v. Howard St. Jewelers, Inc.,* 326 Md. 409, 414, 605 A.2d 123 (1992)); *see Jacobs v. Flynn,* 131 Md.App. 342, 383, 749 A.2d 174, *cert. denied sub nom. Kishel v. Jacobs,* 359 Md. 669, 755 A.2d 1140 (2000); *Green v. State,* 119 Md.App. 547, 563, 705 A.2d 133 (1998); Md. Rule 2–520(c). But, even if an instruction is applicable in light of the evidence before the jury, "a court need not give a requested instruction, even if it may be a correct exposition of the law, 'if the matter is fairly covered by instructions actually given.'" *Kennelly v. Burgess,* 337 Md. 562, 577, 654 A.2d 1335 (1995) (quoting Md. Rule 2–520); *see Dover Elevator Co. v. Swann,* 334 Md. 231, 258–59, 638 A.2d 762 (1994) (stating that "[a] number of Maryland cases also assert the proposition that specifically requested jury instructions are unnecessary where the instructions given adequately encompass the field of law and a party's counsel has room to

argue applicable law in light of the facts of the case"); *Aronstamn v. Coffey,* 259 Md. 47, 51, 267 A.2d 741 (1970); *Baltimore Gas & Elec. Co. v. Flippo,* 112 Md.App. 75, 92, 684 A.2d 456 (1996), *aff'd,* 348 Md. 680, 705 A.2d 1144 (1998).

▮▮▮ The purpose of jury instructions
is to aid the jury in clearly understanding the case and ... to provide guidance for the jury's deliberations by directing their attention to the legal principles that apply to and govern the facts in the case; and to ensure that the jury is informed of the law so that it can arrive at a fair and just verdict.

*Robertson v. State,* 112 Md.App. 366, 385, 685 A.2d 805 (1996); *see Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727 (1994). But, "the standard for reversible error places the burden on the complaining party to show both prejudice and error." *Farley,* 355 Md. at 47, 733 A.2d 1014 (citation omitted).

A person in loco parentis is "charged, factitiously, with a parent's rights, duties, and responsibilities." Black's Law Dictionary (4th ed.1951). "A person *in loco parentis* to a child is one who means to put himself in the situation of the lawful father [or mother] of the child with reference to the father's [or mother's] office and duty of making provision for the child. Or, as defined by Sir Wm. Grant, Master of the Rolls, a person *in loco parentis* is one, 'assuming the parental character and discharging parental duties.' *Weatherby v. Dixon,* 19 Ves. 412.... There must be some indication, in some form, of an intention to establish it. It is a question of intention." *Vonder Horst v. Vonder Horst,* 88 Md. 127, 130–31, 41 A. 124 (1898).

*Pope v. State,* 284 Md. 309, 322, 396 A.2d 1054 (1979).

▮▮▮ There was no direct or circumstantial evidence presented from which the jury could have legitimately concluded that the YMCA intended that it would take over the parents' rights and duties while the children were on its premises. Appellants did prove that agents of the YMCA undertook to monitor the activities of its patrons. But most enterprises that invite large numbers of the general public onto their

premises, whether the invitees are young or old, monitor the activities of their patrons. The mere fact that the activities of the young patrons are monitored does not, standing alone, create a duty to act *in loco parentis* for those children.

In the lower court, appellants relied on Restatement (Second) of Torts, section 320 (1965). That section describes the duty of a person having custody of another *in loco parentis* to control the conduct of third persons, as:

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
>
> (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 320. Comment a. to § 320 indicates that the rule stated in § 320 is applicable to a sheriff or peace officer, a jailer or warden of a penal institution, officials in charge of a state asylum or hospital for the criminally insane, to teachers or other persons in charge of a public or private school, persons operating a private hospital or asylum, and to lessees of convict labor. Appellants presented no evidence that would show that the YMCA ever took custody of young Molock. At all times young Molock was free to leave or stay at the YMCA—as he pleased.

Our Court of Appeals has said that the "relation of a [public] school vis-à-vis a pupil is analogous to one who stands *in loco parentis.*" *Eisel v. Board of Educ.*, 324 Md. 376, 384–85, 597 A.2d 447 (1991) (quoting *Lunsford v. Board of Educ.*, 280 Md. 665, 676, 374 A.2d 1162 (1977)). Appellants argue that the relationship between the YMCA and one who attends its

events is, in turn, analogous to a pupil-school relationship. We disagree. Sending one's child to school—at least until the child reaches sixteen years of age—is, for most people, compulsory.[2] Once at school, students must follow a regimented schedule. A pupil cannot come and go as he/she wishes. And, public-school officials, like a parent, can administer discipline if a child fails to follow lawful directions. On the other hand, there was no evidence produced in the trial court to show that any agent of the YMCA had the right to discipline a child who was guilty of misconduct. Unlike the situation with children who must attend school, parents who send their children to YMCA events know that their children can leave the event at any time without sanction and without the YMCA having any right to stop them.

We hold that the YMCA did not stand *in loco parentis* with Leo Molock, Jr. Therefore, the trial judge did not err in rejecting the instruction proposed by appellants.

But, even if we were to agree with appellants that the YMCA stood *in loco parentis* to its *members* who are children, the trial judge would not have erred in rejecting the proposed instruction, because it concerned only the duty owed to *members* who are children. Appellants did not prove that they or their son were YMCA *members*. They proved only that their son attended an event sponsored by the appellee. Thus, technically, the instruction was not supported by the evidence. *See Farley,* 355 Md. at 47, 733 A.2d 1014.

Lastly, even if we were to assume that the YMCA does stand *in loco parentis* to children who attend its events, reversal would not be warranted because appellants failed to show that they were prejudiced by the instructions actually given. *Id.*

The judge told the jury that as an invitee upon its premises, the YMCA owed Molock a duty to "use reasonable care to see that those portions of the property which . . . [he] may be expected to use are safe." Appellants contrast that instruc-

2. Home schooling is an exception.

tion with the one they wanted, i.e., that the YMCA owed a duty to use "reasonable care to protect" young Molock. The only way that appellants would have been better off with the proposed instruction rather than the one actually given is if the jury interpreted the instruction given as meaning the YMCA only had a duty to use reasonable care that the physical premises were safe, i.e., that the floor was not slippery, no boards were loose, etc. But jury instructions must be read in the context that they are given. Here, there was no issue as to the safety of the physical premises, and when describing negligence, the judge told the jury that a person would be negligent if he failed to used ordinary care, i.e., failed to exercise that amount "of caution, attention, or skill that a *reasonable person* would use under similar circumstances." Read in context, the instructions could only be interpreted as meaning that if the premises were unsafe due to the actions of other patrons, the YMCA was required to use the care a reasonable person would be expected to exercise under similar circumstances to see that the premises were safe for the children. This was appellants' counsel's interpretation at trial as shown by the following excerpt from his closing argument:

> Well, there's no question that they were negligent, and there's no question that every different stage if they had taken the proper steps as any reasonable person would they could have stopped this fight well before it occurred even before the first thing occurred it would have stopped. Because when you have adequate personnel there kids respond to that. If they see people there, they don't do the things they might do. If they don't see anyone there, they start to do them, somebody's warned, nothing happens. It keeps going. Spills out to the very end fighting outside, a guy standing there, nothing happens, boom dead. And all of that could have been prevented at so many different levels if the YMCA wasn't negligent.

Because appellants' trial counsel "could and did present the [duty to protect argument] that [he] would have made had [the requested *in loco parentis* instruction] been given, the matter

was fairly, and adequately, covered in the instructions actually given." *CSX Transp., Inc. v. Continental Ins. Co.*, 343 Md. 216, 243, 680 A.2d 1082 (1996).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**