[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 96 
Janice Marie Smith is the administrator of the estate of her deceased minor son, Kevin Morgan Smith. Janice sued Ronnie Smith a/k/a Ronald Smith, Maria D. Thrash, Mildred Smith, Classie Marie Little, and fictitiously named parties, alleging negligence, wantonness, and willfulness in causing Kevin's death. The trial court entered a judgment as a matter of law in favor of Ronnie Smith, Maria D. Thrash, and Mildred Smith at the close of Janice's evidence.[1] Janice appeals. We reverse and remand.
 I.
On December 10, 1999, Janice took her 10-year-old son, Kevin Morgan Smith, to spend the night with his paternal grandparents, Ronnie Smith and Mildred Smith. Kevin had visited his grandparents approximately three to four times a year since he was six or seven years old. Ronnie and Mildred's house is located on Highway 80 in Phenix City, Alabama. The five-lane highway runs in front of Ronnie and Mildred's home; the highway has two eastbound lanes, two westbound lanes, and a center turning lane.
Maria D. Thrash, Kevin's aunt, was at Ronnie and Mildred's house when Janice dropped Kevin off on December 10. Maria and Mildred had decided earlier that day that later that evening they would go to a jewelry store across the street from Ronnie and Mildred's. Kevin and Maria's daughter Sherry asked if they could go along. Maria and Mildred told them that they had to stay at the house.
At approximately 7:00 p.m., Mildred and Maria left the house and started toward the highway to go to the jewelry store. Kevin and Sherry chased after them. Maria again told Kevin and Sherry to stay in the house, but the children said that both Ronnie and Maria's husband had given them permission to go with Mildred and Maria to the jewelry store.
Maria testified at trial that, although she tried to take Kevin's hand to cross the highway, Kevin raced ahead by himself. Janice provided somewhat conflicting testimony. She testified that Maria had told her that Maria instructed Kevin to run across the highway after Maria had told him that it was "okay" to do so. However, Janice testified that Maria told her that Maria had said "okay" at the end of her instruction to Kevin to ascertain whether he understood her instruction, but that he misconstrued the "okay" to mean that he *Page 97 
should cross the highway at that time, and, according to Janice, Maria said that Kevin rushed out as soon as she had finished instructing him. The record is clear that Kevin attempted to cross the highway by himself and that he was hit by a car. Kevin later died at the hospital.
Janice was named the administrator of Kevin's estate. She sued the driver of the car, Classie Marie Little, alleging negligence, willfulness, and wantonness. She also sued Ronnie, Mildred, and Maria alleging negligence, willfulness, and wantonness in their failure to supervise and protect Kevin. All of the defendants eventually answered, and the trial court set a trial date. The case proceeded to trial against Ronnie, Mildred, and Maria.[2] At trial, Janice testified that she trusted Ronnie, Mildred, and Maria to look after Kevin and to discipline him just as she would. Janice also testified that she considered Ronnie, Mildred, and Maria to stand in her shoes as parent while Kevin was with them.
At the close of Janice's case, Ronnie, Mildred, and Maria moved for a judgment as a matter of law ("JML"), arguing solely that they were entitled to parental immunity because in Janice's absence they stood in loco parentis to Kevin. The trial court granted the motion and entered a judgment in favor of Ronnie, Mildred, and Maria. Janice moved for a new trial on the sole ground that the doctrine of parental immunity should not extend to Ronnie, Mildred, and Maria. The trial court denied that motion. Janice appealed to the Court of Civil Appeals, and the Court of Civil Appeals transferred the case to this Court because it lacked subject-matter jurisdiction. We now reverse the trial court's judgment and remand the case for further proceedings.
 II.
"`[T]his Court uses the same standard the trial court used initially in granting or denying a JML.'" I.C.U. Investigations,Inc. v. Jones, 780 So.2d 685, 688 (Ala. 2000) (quotingDelchamps, Inc. v. Bryant, 738 So.2d 824, 830 (Ala. 1999)). Regarding a question of law, this Court indulges no presumption of correctness as to the trial court's ruling. I.C.U.Investigations, 780 So.2d at 688 (citing Delchamps, Inc.,738 So.2d at 831, and Ricwil, Inc. v. S.L. Pappas Co.,599 So.2d 1126 (Ala. 1992)).
 III.
In moving for a JML at the close of Janice's evidence, Ronnie, Mildred, and Maria argued only that they were not liable because they were entitled to parental immunity.[3] The trial court reasoned that Ronnie, Mildred, and Maria stood in loco parentis
to Kevin and that, consequently, the doctrine of parental immunity extended to shield them from liability. Janice argues that parental-immunity doctrine *Page 98 
based on in loco parentis status is not applicable in this case.[4]
This Court has not defined the standard for determining when a nonparent may stand in loco parentis to a child. Thus, this is a case of first impression. Based on the standard we define today, we conclude that Ronnie, Mildred, and Maria did not standin loco parentis to Kevin and that, therefore, they are not exempt from liability on the basis of parental immunity.
Black's Law Dictionary 803 (8th ed. 2004) defines the term "in loco parentis" as "[o]f, relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent."[5] This Court has delineated two clear situations in which a person or entity stands in loco parentis. First, a teacher "`is regarded as standing in loco parentis'" and has the authority to administer moderate corporal punishment to students under his or her care.Deal v. Hill, 619 So.2d 1347, 1348 (Ala. 1993) (quoting Suitsv. Glover, 260 Ala. 449, 450, 71 So.2d 49, 50 (1954)). Accord,Hinson v. Holt, 776 So.2d 804, 810 (Ala.Civ.App. 1998). Second, the Alabama Department of Human Resources "stands in locoparentis to children of unfit parents." Mitchell v. Davis,598 So.2d 801, 805 (Ala. 1992). In other situations, however, Alabama law does not explain how or when a nonparent may stand in locoparentis. See Lipscomb v. Lipscomb, 660 So.2d 986, 988 (Ala. 1994) (stating in a child-support case that the evidence showed that a grandfather stood in loco parentis to his granddaughter, but not explaining what that evidence consisted of); Dean v.State, 89 Ala. 46, 46, 8 So. 38, 39 (1889) (holding that one standing in loco parentis may administer reasonable punishment to the child, but not discussing how one acquires in locoparentis status); and Deal v. Deal, 545 So.2d 780, 781
(Ala.Civ.App. 1989) (holding that when a stepfather "puts himselfin loco parentis, and has a primary duty," he should support his stepchild, but not explaining how a stepfather puts himselfin loco parentis).
Other jurisdictions have held that a nonparent stands in locoparentis in two situations: (1) where he or she assumes the obligations incidental to parental relations, without legally adopting the child, and (2) where he or she voluntarily performs the parental duties to generally provide for the child. SeeLogan v. Logan, 730 So.2d 1124, 1126 (Miss. 1998) (recognizing that the Mississippi Supreme Court has defined "a person actingin loco parentis as one who has assumed the status and obligations of a person without a formal adoption" and that a person who provides parental supervision, support, and education to a child as if the child were his or her own stands in locoparentis); Hamilton v. Foster, 260 Neb. 887, 903-04,620 N.W.2d 103, 116 (2000) (holding that a person stands in loco parentis
to a child if he or she assumes the obligations incident to the parental relationship without legally adopting the child and noting that "[t]he assumption of the relationship is a question of intent, which may be shown by the acts and declarations of the person alleged to stand in that relationship"); Fevig v. *Page 99 Fevig, 90 N.M. 51, 53, 559 P.2d 839, 841 (1977) (stating that a person stands in loco parentis when "he puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formalities necessary to a legal adoption" and that to act inloco parentis "the person must intend to assume toward the child the status of a parent"); Rutkowski v. Wasko, 286 A.D. 327,331, 143 N.Y.S.2d 1, 5 (1955) (holding that a person stands inloco parentis to a child if he or she assumes all the obligations incident to the parental relationship and actually discharges those obligations); and S.A. v. C.G.R.,856 A.2d 1248, 1248 (Pa.Super.Ct. 2004) (holding that the status of inloco parentis embodies the idea of assumption of a parental status and the discharge of parental duties and that "`[t]he phrase "in loco parentis" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption'"). After reviewing that standard as adopted in these other jurisdictions, we adopt the following standard: In Alabama, a nonparent stands in loco parentis if he or she (1) assumes the obligations incident to parental status, without legally adopting the child, and (2) voluntarily performs the parental duties to generally provide for the child.
A person assuming the status and obligations of in locoparentis must intend to assume that status and those obligations. See Hamilton, 260 Neb. at 903, 620 N.W.2d at 116;Fevig, 90 N.M. at 53, 559 P.2d at 841; and Rutkowski,286 A.D. at 331, 143 N.Y.S.2d at 5. In making a determination as to whether a nonparent stands in loco parentis, courts consider the totality of the circumstances and cannot lightly infer the intent of the person seeking to be considered as standing inloco parentis. See Rutkowski, 286 A.D. at 331,143 N.Y.S.2d at 5. A person taking the child into his or her custody and treating the child as a member of his or her own family constitutes the clearest evidence of an intent to stand in loco parentis. SeeSimms v. United States, 867 A.2d 200, 206 (D.C. 2005).
The duties incidental to a parental relationship involve more than aiding or assisting a child, and more than feeling kindness, affection, or generosity toward the child. Simms,867 A.2d at 207. Performing parental duties generally means: (1) providing support and maintenance for the child, North Carolina v.Pittard, 45 N.C.App. 701, 703, 263 S.E.2d 809, 811 (1980); (2) providing day-to-day care for the child, Hamilton,260 Neb. at 904, 620 N.W.2d at 116; (3) displaying a true interest in the well-being and general welfare of the child, Rutkowski,286 A.D. at 331, 143 N.Y.S.2d at 5; and (4) educating, instructing, and caring for the child. Rutkowski, 286 A.D. at 331,143 N.Y.S.2d at 5. These factors are not exhaustive, and courts should determine from the facts of each case whether the person claiming in loco parentis status is performing parental duties.See Rutkowski, 286 A.D. at 331, 143 N.Y.S.2d at 5. We observe that in analyzing both prongs of the in loco parentis standard we today adopt, courts must consider the totality of the circumstances.
While the length of time a person spends with a child is not determinative of either prong of the standard, it is a significant factor in considering whether that person intended to assume the parental obligations or has performed parental duties. Thus, it is unlikely that a court could find that a nonparent whom the child visits a few times a year or who merely takes care of the child temporarily at a parent's request has displayed the requisite intent to assume parental obligations *Page 100 
or has performed parental duties. See Simms, 867 A.2d at 206-07
(holding that a woman's fiancé could not claim that he stood inloco parentis to his fiancée's child where the child never lived with him and he babysat the child only four or five times within a nine-month period); Pittard, 45 N.C.App. at 703,263 S.E.2d at 811 (holding that "the relationship of in locoparentis does not arise from the mere placing of a child in the temporary care of other persons by a parent or guardian of such child"); and In re Martin, 147 S.W.3d 453, 456 (Tex.Ct.App. 2004) (holding that "it is not apparent how an uncle temporarily supervising a child . . . would fit the meaning of in locoparentis or be protected by parental immunity").
In this case, the record does not show how Ronnie, Mildred, and/or Maria might have stood in loco parentis to Kevin. They may have intended to take care of Kevin while he was visiting Ronnie and Mildred overnight. Janice may have intended for Ronnie, Mildred, and Maria to discipline Kevin and to take care of Kevin while he was visiting. However, babysitting is not standing in the place of a parent and assuming all of the duties incidental to a parental relationship. Simms,867 A.2d at 206-07; Pittard, 45 N.C.App. at 703, 263 S.E.2d at 811; and Inre Martin, 147 S.W.3d at 456. Furthermore, contrary to Ronnie, Mildred, and Maria's argument, the analysis of the in locoparentis standard requires an inquiry into the intent of the person claiming in loco parentis status, not the intent of the child's parent. The record reflects that Kevin lived with his mother, Janice, and his stepfather, and that he visited Ronnie and Mildred three to four times a year. Such visits do not show that Ronnie, Mildred, and/or Maria intended to assume all of the obligations of parents toward Kevin. Ronnie, Mildred, and Maria also fail to show that they, not Janice, provided for Kevin's education, support, and day-to-day care. Applying the in locoparentis standard to these facts, we hold that the trial court erred in ruling that Ronnie, Mildred, and Maria stood in locoparentis to Kevin at the time of the accident and that they were thus protected by the parental-immunity doctrine.
Ronnie, Mildred, and Maria rely heavily on Hinson v. Holt,776 So.2d 804 (Ala.Civ.App. 1998). Hinson states that a teacher stands in loco parentis and has the authority to administer moderate punishment to students. Ronnie, Mildred, and Maria argue that that case stands "for the proposition that when a minor child is placed in the temporary care of another, that person may stand in loco parentis and thus be entitled to parental immunity for claims based upon negligence." (Appellee's brief, p. 15.) We disagree that Hinson has such a broad implication. Schoolteachers are regarded as standing in locoparentis because of particular regular interactions they have with students. "Sending one's child to school . . . is, for most people, compulsory. Once at school, students must follow a regimented schedule. A pupil cannot come and go as he/she wishes." Molock v. Dorchester County Family YMCA, Inc.,139 Md.App. 664, 674, 779 A.2d 963, 968 (2001) (footnote omitted) (holding that a school stands in loco parentis but that the YMCA does not). See also § 16-28-12(a), Ala. Code 1975 ("Each parent, guardian, or other person having control or custody of any child. . . . who fails to have the child enrolled in school. . . . shall be guilty of a misdemeanor and, upon conviction, shall be fined not more than one hundred dollars ($100) and may also be sentenced to hard labor for the county for not more than 90 days."). Hinson was limited in its holding to schoolteachers because teachers are such a regular part of students' lives and because the teachers have the opportunity to nurture and observe students' physical growth, mental abilities, and social interactions. We decline to expand the holding in Hinson *Page 101 
to other adults in children's lives who may not play the same role as schoolteachers. Instead, we hold that the in locoparentis standard we set out today is applicable to determine whether a person stands in loco parentis in situations that do not involve schoolteachers or the Department of Human Resources.
 IV.
Because the trial court accorded Ronnie, Mildred, and Maria inloco parentis status, the trial court erroneously applied the doctrine of parental immunity to bar Janice's action against Ronnie, Mildred, and Maria. The parental-immunity doctrine prohibits an unemancipated minor child from bringing a civil action against the child's parent. Mitchell v. Davis,598 So.2d 801, 803 (Ala. 1992). The parental-immunity doctrine was created to protect family harmony and to prohibit actions that may cause discord in intimate family relations. 598 So.2d at 804; andRutkowski, 286 A.D. at 329-30, 143 N.Y.S.2d at 3-4. Because Ronnie, Mildred, and Maria did not stand in loco parentis to Kevin, however, the trial court erred in applying the parental-immunity doctrine to them.
 V.
We conclude that the trial court erred in holding that Ronnie, Mildred, and Maria stood in loco parentis to Kevin and in applying the parental-immunity doctrine to shield them from liability in this case. Therefore, we reverse the trial court's judgment in favor of Ronnie, Mildred, and Maria. We remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The record reflects that Classie Little responded to the complaint by filing a letter apologizing for the incident and stating that she could not afford to hire an attorney. The trial court treated the letter as an answer to the complaint. Thereafter, Janice appears to have ceased prosecuting the case against Little and proceeded against Ronnie, Mildred, and Maria only. The record reflects that the trial court entered a judgment dismissing Little when it dismissed the case in favor of Ronnie, Mildred, and Maria.
[2] See note 1.
[3] Ronnie, Mildred, and Maria did not contend, in moving for a preverdict JML, that Janice had failed to present sufficient evidence in support of her claims. See Rule 50, Ala. R. Civ. P. ("If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to that claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."). Thus, the issue whether, in the absence of the benefit of the parental-immunity doctrine, Ronnie, Mildred, or Maria was nonetheless entitled to a JML because of the insufficiency of Janice's evidence is not before us.
[4] Janice also argues that the trial court, sua sponte, erroneously applied the Alabama Guest Statute, § 32-1-2, Ala. Code 1975. Because our resolution of the parental-immunity issue disposes of this case, we need not address the issue whether the trial court erroneously applied the Guest Statute.
[5] Black's Law Dictionary 1178 (8th ed. 2004) defines "person in loco parentis" as "[a] person who acts in place of a parent, either temporarily (as a schoolteacher does) or indefinitely (as a stepparent does); a person who has assumed the obligations of a parent without formally adopting the child."