MURDOCK, Justice
(dissenting).
In my view, the main opinion misapprehends the meaning of the “in-need-of-care- and-supervision” requirement of Ala.Code 1975, § 12-15-l(10)n. In the process, the Court today renders null time-honored jurisprudence that extends to well before the creation of the State Department of Human Resources and the enactment of the Alabama Juvenile Justice Act and that, until today, has served to limit the reach of the State through these mechanisms. In doing so, it sets the stage for unnecessary intrusion by the State, through the Department of Human Resources and other mechanisms of the juvenile court system, into situations where a parent has exercised his or her natural and constitutionally protected right to make appropriate arrangements for the care and supervision of his or her child when the parent is unable to provide that care and when the person with whom the parent has placed the child (who in a given case could be a grandmother or other close relative of the child) is giving the child appropriate love, care, and attention — situations in which it cannot in any sense be said that, if the State does not intervene, the child will be without appropriate care and supervision. I therefore am compelled to dissent.
The child in this case is not “in need of care or supervision.” The main opinion correctly recognizes that under Ala.Code 1975, § 12-15-1(10) (since amended and renumbered as § 12-15-102(8)), there are two elements that must be satisfied for a child to be deemed a “dependent child” as that term is defined in § 12-15-1(10). “A child who falls into one of the categories described in § 12-15-l(10)a. through m., *1051 including a child who has been abandoned, and, in that foregoing condition, is ‘in need of care or supervision’ [see '§ 12 — 15— l(10)n.] meets the statutory definition of a dependent child.” 61 So.3d at 1047. The main opinion then proceeds, however, to collapse the second element into the first element, stating:
“It is a reasonable interpretation of § 12-15-1(10) to require that, in determining whether a child is ‘in need of care or supervision,’ the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child. The child is entitled to the care or supervision from those persons with the authority to take appropriate actions on behalf of the child, such as, for example, to enroll the child in school, to authorize ■ medical care for the child, and to obtain insurance for the benefit of the child. This interpretation comports with the purposes of the Alabama Juvenile Justice Act, now § 12-15-101 et seq., Ala. Code 1975, among which are to provide children with permanency and to foster family preservation.”
61 So.3d at 1047 (some emphasis added).
I first note that the approach taken by the main opinion misdirects the clearly intended focus of the second element of the definition of a dependent child. Nothing in the second element focuses on who is failing to provide care or supervision, i.e., that it must be those legally obligated to do so. That is the focus of the list of categories that make up the first element. A “dependent child” is:
“A child:
“a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
“b. Who is unthout a parent or guardian able to provide for the child’s support, training, or education; or
“c. Whose custody is the subject of controversy; or
“d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
“e. Whose parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical, or other care necessary for the child’s health or well-being; or
“f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
“g. Who has no proper parental care or guardianship; or
“h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state; or
“i. Who has been abandoned by the child’s parents, guardian, or other custodian; or
“j. Who is physically, mentally, or emotionally abused by the child’s parents, guardian, or other custodian or who is without proper parental care and control necessary for the child’s well-being because of the faults or habits of the child’s parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or “k. Whose parents, guardian, or other custodian are unable to discharge *1052 their responsibilities to and for the child; or
“l. Who has been placed for care or adoption in violation of the law; or
“m. Who for any other cause is in need of the care and protection of the state.... ”
Ala.Code 1975, § 12-15-l(10)(emphasis
added) (now amended and renumbered as Ala.Code 1975, § 12-15-102(8)). Instead, the focus of the second element is on the present condition of the child, i.e., whether (i.e., there remains a question to be answered), in addition to the fact that those legally obligated to provide for the child are unable or unwilling to do so as described in the first element, the child also is “in need of care or supervision.”
By propounding the second element, the legislature obviously contemplated that the first element of the definition could be satisfied as to a child, but not the second element; otherwise there would be no need for the second element. Thus, a child might be “abandoned by [his or her] parents,” but not be “in need of care or supervision.”[5] In fact, it is upon this well settled rationale that grandparents and other relatives have been directed by our courts to file custody cases in the circuit court, rather than dependency cases, which fall within the exclusive jurisdiction of the juvenile comt The Court of Civil Appeals recently noted in K.C.G. v. S.J.R., 46 So.3d 499 (Ala.Civ.App.2010):
“Juvenile courts, as courts of limited jurisdiction, only have subject-matter jurisdiction as expressly conferred by statute. See Ex parte K.L.P., 868 So.2d 454, 456 (Ala.Civ.App.2003). ‘A juvenile court has jurisdiction in proceedings involving a child who is alleged to be dependent, § 12-15-30(a), Ala.Code 1975, and in custody proceedings when the child is “otherwise before the court.” § 12 — 15—30(b)(1), Ala.Code 1975.’ K.S. v. H.S., 18 So.3d 417, 418 (Ala.Civ.App.2009).
“The paternal grandmother properly invoked the dependency jurisdiction of the juvenile court when she filed her petition in January 2008. See Ala.Code 1975, former 12-15-30(a) (‘The juvenile court shall exercise exclusive original jurisdiction of proceedings in which a child *1053 is alleged to be ... dependent....’); see also C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (“When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code.’).
“Once the dependency jurisdiction of a juvenile court has been properly invoked, the juvenile court has an imperative statutory duty to conduct an evidentiary hearing to determine the dependency of the child. Ex parte Linnell, 484 So.2d 455, 457 (Ala.Civ.App.1986) (‘[Pjursuant to § 12-15-65, [Ala.Code 1975,] a hearing on the merits of the petition itself is required to determine if the children are, in fact, dependent....’); see also Ex parte W.H., 941 So.2d 290, 299 (Ala.Civ.App.2006). If a juvenile court determines that the child is not dependent, the court must dismiss the dependency petition. Ala.Code 1975, former § 12-15-65(d). On the other hand, if, and only if, a juvenile court finds that the child is dependent, the court may then conduct proceedings to determine the custodial disposition of the child. Ala. Code 1975, former § 12-15-65. Ex parte K.S.G., 645 So.2d 297 (Ala.Civ.App.1992)(holding that juvenile court never assumed jurisdiction to determine issue of custody of child when evidence revealed that there was no emergency situation rendering the child dependent as alleged in mother’s petition); Ex parte J.R.W., 630 So.2d 447 (Ala.Civ.App.1992) (holding that juvenile court that had never declared child dependent had no jurisdiction to enter order affecting visitation rights of father); J.W. v. W.D.J., 743 So.2d 467, 469 (Ala.Civ.App.1999) (holding that once juvenile court found children dependent, it had exclusive jurisdiction to determine their custody); Ex parte W.H., supra (holding that juvenile court erred in transferring custody of allegedly dependent child without holding evidentiary hearing to ascertain dependency of child); C.D.S. v. K.S.S., [963 So.2d 125, 129 (Ala.Civ.App.2007) ] (holding that juvenile court that determined child was not dependent had no jurisdiction to thereafter determine custody of child); and E.H. v. N.L., 992 So.2d 740 (Ala.Civ.App.2008) (holding that, when evidence did not prove dependency of child as alleged in complaint, but revealed pure custody dispute, juvenile court was without jurisdiction to determine custody of child). As this court recently stated: ‘ “[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’” V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008) (quoting K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the result)).
“In this case, the juvenile court announced to the parties that it did not intend to treat the case as a dependency action but that it intended to determine only the custody of the child. The juvenile court then entered a judgment in which it did not declare the child dependent, but merely decided that the paternal grandmother should have custody of the child due to the mother’s unfitness. This court addressed an almost identical scenario recently in T.B. v. T.H., 30 So.3d 429 (Ala.Civ.App.2009). In T.B., the Lee Juvenile Court took jurisdiction over a petition alleging the dependency of a child. At the adjudicatory hearing on the petition, the judge declared that, although dependency had been alleged, he considered the case to be more in the *1054 nature of a custody case, which statement was subsequently included in the final judgment. The Lee Juvenile Court awarded custody of the child to the child’s maternal grandmother, based not on a finding of dependency and that such custody served the best interests of the child, but on a finding that the mother of the child had voluntarily relinquished custody of the child to the child’s maternal grandparents and that the mother of the child was unfit to recover custody of the child. On appeal, this court, ex mero motu, determined that the Lee Juvenile Court had acted outside its jurisdiction. The court stated:
‘“Juvenile courts are purely creatures of statute and have extremely limited jurisdiction. See Ex parte K.L.P., 868 So.2d 454, 456 (Ala.Civ.App.2003). That limited jurisdiction allows a juvenile court to make a disposition of a child in a dependency proceeding only after finding the child dependent. V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008) (quoting K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the result)) (“ ‘[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’ ”).
“ ‘In the case at bar, the maternal grandparents’ allegation that the child was dependent was the only basis for the juvenile court’s jurisdiction to make a final determination as to the custody issue. In the final judgment and in his eai'lier oral pronouncement, the juvenile-court judge declared that he had found that the maternal grandparents had proven the material allegations in their petition by clear and convincing evidence. That statement, standing alone, would indicate that the juvenile court had found the child dependent. The maternal grandparents did allege in them petition that the child was dependent, and allegations of dependency must be proven by clear and convincing evidence. See Ala.Code 1975, § 12-15-65(f). However, the judge plainly stated in the judgment, as he did at the end of the final hearing, that “the [juvenile court] is of the opinion that even though dependency is alleged, ... this, in fact, is a custody case.” See A.L. v. S.J., 827 So.2d 828, 833 (Ala.Civ.App.2002) (when parties disputed whether underlying action was dependency action, facts that trial court, a juvenile court, stated that “ ‘[t]here is nothing that does indicate that this is a dependency case’ ” and that trial court made no express finding of dependency supported conclusion that action was not a dependency action). Based on that premise, the court then proceeded to find that the mother had voluntarily relinquished custody of the child to the maternal grandparents and that the mother was unfit to have custody of the child. Those findings are essential to overcome the presumption in favor of parental custody in a child-custody case between a parent and a nonparent, see Ex parte Terry, 494 So.2d 628 (Ala.1986) (also holding that those facts must be proven by clear and convincing evidence), but those findings are not required in a dependency case. See O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App.1999) (“This case is not simply a custody dispute between a parent and nonpar-ent, but, rather, is a dependency case; therefore, Terry is not applicable.”); J.P. v. S.S., 989 So.2d 591 (Ala.Civ.App.2008); and W.T.H. v. M.M.M., *1055 915 So.2d 64 (Ala.Civ.App.2005); see also K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 387 (Ala.Civ.App.2004) (holding that Terry “ ‘parental unfitness’ ” standard is “more stringent” than the dependency “best interests” standard). Likewise, the finding that the maternal grandparents had met the [Ex parte] McLendon[, 455 So.2d 863 (Ala.1984),] standard is inconsistent with a disposition under the dependency statute, which is governed by the “best interests” standard. See L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005) (“Because this is a dependency case, the juvenile court needed to determine only if transferring legal custody of the child to the father was in the best interest of the child.... The juvenile court’s determination of dependency obviated any necessity to apply the heightened custody-modification standard found in Ex parte McLendon.”). We therefore conclude that the final judgment reflects the juvenile court’s intention to treat the case as a custody case, not a dependency case. Once the juvenile court decided that the case ivould not be decided on dependency principles, the juvenile court had no jurisdictional basis for determining custody of the child.... ’
“30 So.3d at 431-32 (footnote omitted; emphasis added); see also M.P. v. C.P., 8 So.3d 316 (Ala.Civ.App.2008) (Tallade-ga Juvenile Court lacked subject-matter jurisdiction over father’s petition alleging dependency of children, which juvenile court acknowledged three times during trial; action was actually a veiled custody dispute within the jurisdiction of the Talladega Circuit Court in a divorce action).
“The facts of this case essentially rest on all fours with the facts in T.B. Like in T.B., a relative petitioned for a declaration of dependency and custody of a child. Like in T.B., the juvenile court elected to treat the action as a custody dispute. Like in T.B., the juvenile court did not find the child dependent, but it awarded custody to the paternal grandmother solely on the basis of the unfitness of the mother. Like in T.B., the child was not ‘otherwise before the court’ such that the juvenile court would have had jurisdiction under former § 12-15-30(b) to decide a pure custody dispute. In accord with T.B., once the juvenile court recognized that the case did not involve a question of dependency, it lost jurisdiction over the remaining subject matter, i.e., the dispute over the custody of the child.”
46 So.3d at 501-04 (footnotes and some emphasis omitted; emphasis added).
Today, however, this Court rejects the rationale of K.C.G. and the long line of precedent it discusses, along with well settled precedent that predates our dependency law. We now blur, indeed largely remove, the line between true dependency cases, which fall within the limited, exclusive jurisdiction of the juvenile court and which are governed by the statutory dependency scheme, see Ala.Code 1975, § 12-15-114 (formerly § 12-15-30), and mere third-party custody cases, which are governed by the standard announced in Ex parte Terry, 494 So.2d 628 (Ala.1986), and which fall within the jurisdiction of the juvenile court only if some other basis for juvenile-court jurisdiction exists.
Disputes between third parties and parents as to the custody of a child have long been treated as custody matters, see, e.g., Stoddard, v. Bruner, 217 Ala. 207, 115 So. 252 (1928) (custody dispute between father and maternal uncle after mother had abandoned the child); Esco v. Davidson, 238 *1056 Ala. 653, 193 So. 308 (1940)(custody dispute between father and paternal aunt where father had allegedly relinquished custody to the paternal aunt), rather than as cases governed by the then existing dependency laws. See Ala.Code 1923, § 3528 et seq.; Ala.Code 1940, Tit. 13, § 350 et seq. Until today, Ex parte Terry, 494 So.2d 628 (Ala.1986), and its progeny have reflected the fact that that remains the case except when the specific requirements defining “a dependent child” in the Juvenile Justice Act are satisfied.
Just as in the present case, the mother in Terry had “voluntarily relinquished the custody of her child to a nonparent,” whose ability and willingness to care for and supervise the child were not in question. 494 So.2d at 632. This Court stated the issue in Terry as follows:
“[W]hether a father, who was not awarded custody by a prior divorce decree, but who has not been found to be unfit, has thereby lost his prima facie right of custody in a subsequent custody proceeding as against the rights of a non-parent (the maternal grandfather) with whom the mother, who was awarded custody by the divorce decree, has placed physical custody of the child.”
494 So.2d at 630 (some emphasis omitted; some emphasis added). We articulated the following standard to be applied by the circuit court to the ensuing custody dispute between a nonparent and the father:
“‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of ... misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.’ ”
494 So.2d at 632 (quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)). See, e.g., R.K. v. R.J., 843 So.2d 774 (Ala.Civ.App.2002) (Terry standard applied to a custody dispute between the maternal grandparents and the father in juvenile court; juvenile court had “retained jurisdiction” from an earlier paternity proceeding).
Under the new rule announced today in the main opinion, it now will be impossible to distinguish a Ten~y case from a dependency case. Thus, a grandparent who has been caring for a child for several years because a parent or the parents have placed the child with the grandparent to raise, will now have to file a dependency proceeding in the juvenile court, rather than a custody proceeding in the circuit court, in order to obtain a custody award to be able to enroll the • child in school.[6] This is so because under the new approach adopted by this Court today, if the parents themselves are not providing the daily, hands-on care and supervision of the child, then the child is considered “dependent” (assuming that one of the first-element categories is met). It matters not that the child is being raised in a loving home by fully able and caring relatives or friends or neighbors with whom a parent has placed the child and perhaps with whom the child has lived, as in this case, for several years; that child will now be deemed “dependent” and will be subject to the mechanisms of the Juvenile Justice Act. Even more pro- *1057 blematie, because dependency cases are in the exclusive jurisdiction of the juvenile court, countless custody awards that have been made to nonparents will now be considered' void because the circuit court lacked jurisdiction to make the award.[7]
Second, I note that the approach taken by the main opinion violates the rules of statutory construction. See, e.g., Ex parte Children’s Hosp. of Alabama, 721 So.2d 184, 191 (Ala.1998) (recognizing the basic principle of statutory construction that it will be presumed that every word, sentence, or provision of a statute has meaning and effect). Obviously, all children are in need of care and supervision by someone other than themselves; in the same sense, all children are dependent. If this axiomatic notion is all that is meant by § 12-15-l(10)n., then § 12-15-l(10)n. is surplusage, adding nothing of any import to the criteria for dependency prescribed in § 12-15-l(10)a. through m. Yet this, in essence, is the position staked out in the main opinion. By saying that a child automatically meets the in-need-of-care-and-supervision criterion merely if the child’s parents are not the adults providing daily care and supervision, § 12-15-l(10)n. is given no meaning beyond what inherently flows from the application to a child of one of the criteria prescribed in § 12-15-l(10)a. through m.
The issue whether a child is “in need of care or supervision” begs the question, need of care and supervision by whom? The issue whether a child is a “dependent child” likewise begs the question, dependent on whom? The logical and obvious answer — and the answer that has prevented the statute from being considered in conflict with all the above-discussed case-law for many decades now — is quite simply, the State.
If the child is receiving proper care and supervision from a nonparent who stands in loco parentis,[8] then, as indicated by all *1058 the above-discussed cases, all that is needed is a custody award in favor of that third party or, if it is in the better interest of the child, in favor of another who is seeking custody. As in the above-discussed cases, such a circumstance has heretofore been properly directed to the circuit court as a “mere custody dispute” to be adjudicated pursuant to the standard announced in Ex parte Terry. It is not a circumstance necessitating or justifying the intervention of the Department of Human Resources.
If a child is in need of the actual care or supervision of the State (generally through the involvement of the Department of Human Resources), then the child may be dependent. But a child who is being adequately cared for and supervised, particularly a child who is being adequately cared for and supervised by a fit custodian in whose care the child was placed by the child’s own mother when there is no evidence indicating that the mother was not fit to make the choice of a custodian, is not a “dependent” child. Thus it is that a single parent may place her child with her own mother, or her sister’s family, or even her neighbor, before being deployed by the military to a foreign country for an extended period or before checking herself into an alcohol-treatment center for an extended period, without making that child a “dependent child.” Unless the custodian with whom such a mother places the child is shown to be unfit, there is no basis in our law for the Department of Human Resources or any other instrumentality of the State to take custody of the child or to take any position in a judicial proceeding that could interfere in any way with the custody choice made by that mother.
In the present case, the juvenile court concluded, based on ore tenus evidence, that, although dependency had been alleged, the child was in fact not a dependent child. The evidence supports this conclusion, though not for the reason apparently thought by the juvenile court. When L.E.O. and P.O. filed their petition, the mother had placed the child in their care because she was admittedly unable or unwilling to care for him. L.E.O. and P.O. provided a loving and proper home for the child for several years before they filed their petition, including providing all financial support for the child. They desired to continue to provide for the care and supervision of the child and sought an award of custody to facilitate their efforts, including a formal award of custody so the child could be enrolled in school and could be placed on L.E.O. and P.O.’s health-insurance policy.
The evidence supports the conclusion that this case is a custody dispute between a third party and a parent rather than a dependency case. Therefore, the dismissal of the case — the result reached by the juvenile court — was the correct result. As a mere custody dispute, this case fell within the general jurisdiction of the circuit court, Ala. Const.1901, § 142(b), rather than within the limited jurisdiction of the juvenile court.

. The same approach applies under the current statute, § 12-15-102(8), which defines a "dependent child” as follows:
"a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
"7. Who has been placed for care or adoption in violation of the law.
"8. Who, for any other cause, is in need of the care and protection of the state.”

. There is no statutory basis on which to differentiate between third-party relatives and third-party nonrelatives so far as the definition of a dependent child is concerned.

. In addition, the understanding expressed in the main opinion of what constitutes a "dependent child" creates an unnecessary jurisdictional conflict between the juvenile court and the probate court, which has jurisdiction in certain cases concerning the "protection of minors,” Ala.Code 1975, § 26-2A-31; see also Ala. Const. 1901, § 144 ("general jurisdiction” of probate court includes "guardian-ships”). For example, under the main opinion’s understanding of dependency, if both parents of a child are deceased or incapacitated and the parents have not nominated a guardian pursuant to Ala.Code 1975, § 26-2A-71, the child would be a dependent child because the child is "without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.” Ala.Code 1975, § 12 — 15— 102(8)a.2. Yet, if the maternal grandparents, or some other "person interested in the welfare of the minor,” Ala.Code 1975, § 26-2A-75(a), filed a petition for the appointment of a guardian, the probate court would be authorized to appoint a guardian, Ala.Code 1975, § 26-2A-73, who would have "the powers and responsibilities of a parent regarding the [child’s] health, support, education, or maintenance,” Ala.Code 1975, § 26-2A-78(a). How, in light of the exclusive original jurisdiction of the juvenile court in cases involving dependent children, could the probate court assume jurisdiction to appoint the child’s guardian under the foregoing circumstances? Did the legislature craft a conflict into the statutes describing the jurisdiction of the juvenile court and the probate court or purportedly authorize the juvenile court to infringe on the jurisdiction of the probate court as described in § 144? As hereinafter explained, I do not believe such a conflict exists if the notion of "dependency” is properly understood.

. In Smith v. Smith, 922 So.2d 94, 99 (Ala.2005), this Court held that "a nonparent stands in loco parentis if he or she (1) assumes the obligations incident to parental status, without legally adopting the child, and (2) voluntarily performs the parental duties to generally provide for the child.” We further noted that “[a] person taking the child into his or her custody and treating the child as a member of his or her own family constitutes *1058 the clearest evidence of an intent to stand in loco parentis." Id. L.E.O. and P.O. properly can be described as parties who stand "in loco parentis.”