941 So.2d 290 (2006)
Ex parte W.H., Jr., and K.H.
(In the matter of T.T.O., also known as T.T.H., a minor child).
N.O.
v.
J.R.O. and C.W.O.
2050026 and 2050040.
Court of Civil Appeals of Alabama.
May 5, 2006.
*291 J. Bary Abston, Huntsville, for petitioners W.H., Jr., and K.H.
Reta A. McKannan, Huntsville, for appellant N.O.
Tiffan Miller Taylor, Huntsville, for appellees J.R.O. and C.W.O.
Joan-Marie Kettell, Huntsville, for C.O.
THOMPSON, Judge.
In April 2005, N.O. ("the mother") and C.O. ("the father") (collectively "the parents") were arrested on burglary charges and incarcerated. At that time, the parents and T.T.O., also known as T.T.H. ("the child"), were residing in the home of J.R.O. and C.W.O., the father's parents and the child's paternal grandparents (collectively "the paternal grandparents"). The child's date of birth is October 11, 2003.
On April 19, 2005, apparently while the parents remained incarcerated, W.H., Jr., the child's maternal grandfather, and his wife, K.H., the child's maternal stepgrand-mother (collectively "the maternal grandparents"), filed in the juvenile court a petition seeking custody of the child as well as pendente lite custody of the child.[1] The juvenile court assigned their petition case *292 no. JU-05-1584.01. In their April 19, 2005, petition, the maternal grandparents asserted that the child was a dependent child within the meaning of § 12-15-1(10), Ala. Code 1975. They alleged, among other things, that the parents were addicted to drugs and mind-altering substances; that repeated efforts at rehabilitating the parents had failed; that the parents had lost custody of their older child in a previous juvenile proceeding; and that, due to the parents' drug-related problems, the parents were unable to safely care for and parent the child. The maternal grandparents asserted that they were fit and proper persons to have custody of the child and that the child's best interests would be served by granting them custody of the child. The maternal grandparents also submitted affidavits of the child's maternal great-grandfather, the maternal grandfather, and one of the mother's cousins; those affidavits set forth details regarding the parents' drug abuse. The maternal grandparents also submitted an "Alabama Uniform Incident/Offense Report Supplement Report" of the Madison County Sheriff's Department regarding the parents' arrest for stealing tools from the maternal grandparents. In his affidavit, the maternal grandfather stated that "I am pressing charges against [the parents] because this is the only way that I know to make them get some help."
On April 27, 2005, the juvenile court entered an order granting the maternal grandparents pendente lite custody of the child. In that order, the juvenile court also appointed a guardian ad litem for the child.
On April 26, 2005, the day before the juvenile court entered its April 27, 2005, pendente lite custody order, the parents and the paternal grandparents had filed in the juvenile court a sworn pleading styled "joint stipulation of the [parents and the paternal grandparents]" in which the parents and the paternal grandparents agreed to transfer custody of the child to the paternal grandparents. The parents and the paternal grandparents requested that the juvenile court adopt as a custody order that "joint stipulation." The juvenile court assigned that "joint stipulation" case no. JU-05-1596.01; that "joint stipulation" stated, in relevant part:
"This agreement, made and entered into on the 26th day of April, 2005, by and between [the parents] and [the paternal grandparents].
". . . .
"WHEREAS, the natural parents of the minor child . . . are currently incarcerated in the Madison County Jail and are charged with a felony. Prior to said incarceration the [parents] and the minor child . . . had resided with the [paternal grandparents] for some time. The [parents] have suffered with certain drug-related problems and the paternal grandparents have provided support for the [parents] and the . . . minor child and
"WHEREAS, the parties have reached this agreement with regard to custody of the minor child . . . and desire that the Court approve their Agreement and incorporate the parties' Agreement into a final order and decree of this Court; and
"NOW THEREFORE, in consideration of the promises, and of the mutual covenants herein provided, it is hereby agreed by and between the parties as follows:
"1. The parties stipulate that the minor child is [a] dependent child, as defined in section 12-15-1(10) of the Code of Alabama, 1975. The [paternal grandparents] shall have the legal and physical custody of the minor child. . . .

*293 "2. Upon the [parents'] release from jail, they shall have visitation with the child at all times and places as is agreed upon by the parties. The parties agree that the visitation shall be exercised in a suitable location for the minor child and that all persons present shall be free from alcohol or any mind-altering substance.
"3. At the time of execution of this Agreement, neither of the [parents] is steadily employed. The parties stipulate and agree that the [parents] are currently experiencing substantial financial distress, and the parties further agree that a child-support obligation should be deferred at this time. Should the [parents] be released from jail, they shall contribute to the costs of the minor child as they are financially able. The parties agree that said child support is a deviation from Rule 32 Guideline Support and that said deviation is warranted at this time.
"4. The parties agree that this Agreement constitutes the entire understanding between the parties and supersedes all and any other prior agreements, if any, heretofore made between them other than those herein expressly set forth. The parties further acknowledge that each has signed this agreement freely and voluntarily and after having had an opportunity to consult with legal counsel. It is agreed between the parties that this Agreement shall be filed in the Juvenile Court of Madison County, Alabama in a dependency action there, and it is acceptable by the parties that the provisions of this Agreement, if acceptable to the Court, shall be incorporated into and made a part of a Final Order of Custody . . . in that action, or in the event this Agreement is not acceptable to said Court for the purposes hereinabove set out, the same shall be and become null and void and shall not be evidence or considered as such by any Court."[2]
On April 29, 2005, the paternal grandparents filed a motion to set aside the April 27, 2005, pendente lite custody order. In their April 29, 2005, motion, the paternal grandparents alleged, among other things, that on April 26, 2005, the parents had "signed custody" of the child over to them, that the maternal grandparents were aware of that fact, and that the child had resided in their home for over two years. The paternal grandparents requested that the juvenile court permit the child to remain in their home where he was safe, well cared for, and well adjusted. The paternal grandparents agreed to cooperate with the guardian ad litem for the child; they also agreed not to leave the child alone with the parents pending a hearing on the matter.
Also, on April 29, 2005, the maternal grandparents filed a motion styled "Motion for Order Directing the Sheriff of Madison County to Place Minor Child in the Custody of [the Maternal Grandparents]." In their April 29, 2005, motion, the maternal grandparents alleged, among other things, that the paternal grandparents had refused to turn the child over to them after being served on April 28, 2005, with the April 27, 2005, pendente lite custody order; that the parents continued to reside in the paternal grandparents' home; and that it was not in the best interests of the child to remain in a home with the parents because of the parents' problems with drug addiction. *294 The maternal grandparents also alleged that on April 29, 2005, they had discovered that the parents were attempting to transfer custody of the child to the paternal grandparents via the parents and the paternal grandparents' "joint stipulation." In support of their April 29, 2005, motion, the maternal grandparents attached a copy of the April 27, 2005, pendente lite custody order and the "joint stipulation."
On May 4, 2005, the juvenile court held a hearing regarding case no. JU-05-1584.01 and case no. JU-05-1596.01. Although that hearing was not transcribed, the maternal grandparents, on appeal, pursuant to Rule 10(f), Ala R.App. P., properly supplemented the record with a "joint stipulation with respect to hearing of May 4, 2005," which was signed by the maternal grandparents, the paternal grandparents, and the guardian ad litem;[3] that stipulation stated, in relevant part:
"a. [The maternal grandparents] were personally present and were represented . . . by [counsel]. [The paternal grandparents] were personally present and were represented . . . by [counsel]. [The parents] . . . of the subject minor child were present and were not represented by counsel. . . . [T]he guardian ad litem for the subject minor child, was also personally present. . . .
"b . Judge Sherrod did not take testimony at the hearing, but stated that on a pendente lite basis the paternal grandparents . . . should exercise custody of the minor child pending further orders of the Court, and that the parties should attempt to work out visitation by agreement. Judge Sherrod directed that the natural parents['] contact with the minor child should be supervised by one of the four grandparents. [The parents] . . . did not object to the Court's decision to place pendente lite custody of the minor child with the paternal grandparents at the hearing of May 4, 2005.
"c. Judge Sherrod directed that the two cases be consolidated under one case number."
The juvenile court did not enter a written order following the May 4, 2005, hearing.
In August 2005, the maternal grandparents filed several motions seeking pendente lite visitation with the child; those motions bore case no. JU-05-1584.01 only.
On September 27, 2005, the juvenile court entered an order in case no. JU-05-1584.01 and case no. JU-05-1596.01, stating in relevant part, as follows:
"On information and belief the above actions involve the same child. The [maternal grandparents'] Petition seeks to have the minor child declared a dependant child.
"The [paternal grandparents'] Petition for custody, with the consent of the biological parents, seeks a consent judgment placing custody with the paternal grandparents. The child . . . IS NOT a dependant child as defined within the law.
"[The child] is a child whose biological parents seek to transfer custody to his paternal grandparents.
"This Court is unable to establish a `right to reasonable visitation' for the [maternal] grandparents. The Court continues to encourage ALL grandparents to work through their differences for the best interest of the child.
"Motion for Order Directing the Sheriff of Madison County to Place Minor Child in the Custody of [the maternal grandparents] is DENIED.

*295 "FIRST AND SECOND MOTION FOR ENTRY OF PENDENTE LITE VISITATION SCHEDULE DENIED.
"The Ex-Parte Pendente Lite Order entered by this Court April 27, 2005 is hereby set aside.
"The child shall remain in the home of the paternal grandparents pending further order of this Court.
"A Hearing shall be held on September 28, 2005."[4]
(Capitalization in original).
On September 27, 2005, the maternal grandparents filed a motion to alter, amend, or vacate the September 27, 2005, order. In their motion, the maternal grandparents asserted, among other things, that the juvenile court had erred in determining that the child was not a dependent child and that it was improper for the juvenile court to make such a determination without affording them an opportunity to present evidence. The maternal grandparents also asserted that the juvenile court should have awarded them visitation; they specifically requested that "[i]n the event that the Court awards custody to the [paternal grandparents] after hearing all of the evidence, . . . the Court award them reasonable visitation."
On September 28, 2005, the juvenile court held a hearing regarding case no. JU-05-1584.01 and case no. JU-05-1596.01. Present at the September 28, 2005, hearing were the guardian ad litem, the maternal grandparents and their counsel, and the paternal grandparents and their counsel. The father was also present; he was not represented by counsel. The mother was not present at the September 28, 2005, hearing. However, on that same day, apparently just before the hearing began, the mother filed a motion styled "motion to withdraw consent for custody order, motion to continue, and affidavit"; the mother's sworn pleading stated, in relevant part:
"I am submitting this affidavit to the Court for the purpose of requesting the Court to allow me to withdraw a written consent that I previously signed wherein I agreed to place custody of . . . [the child] with [the paternal grandparents].
"I am currently in an in-house drug treatment program. I have a serious addiction to drugs. At the time that I signed documents agreeing to place custody of my son with [the paternal grandparents], I was not thinking clearly due to my problem with drugs.
"My father, [the maternal grandfather], warned me that if I did not get myself straightened out, he would file for custody of [the child]. Later, after I did not stop using drugs, my father informed me that he was in the process of filing for custody. When [the father] and I learned that [the maternal grandparents] were filing for custody, we rushed to sign documents placing custody of our child with [the paternal grandparents]. We were trying to stop [the maternal grandparents] from getting custody of [the child]. There had never been any discussion of [the paternal grandparents] having custody of [the child] until my father indicated that he was pursuing custody of [the child].
"As I began the process of getting off of drugs, I realized that I had made a serious mistake. When I was on drugs, I perceived [the maternal grandparents] as being unhelpful and unkind to me; I now realize that they were simply refusing to tolerate or enable my addictive *296 behavior. I now realize that [the maternal grandparents] were engaging in `tough love,' by not enabling my addictive behavior. [the maternal grandparents] have always been ready to provide me with assistance, but all offers of assistance were tied to [my] getting off of drugs, and I resented this.
"I desperately want a chance to get off drugs, to get my life back on track, and to get custody of [the child]. I am asking the Court to continue the hearing in this case to give me this opportunity.
"In the event that I cannot be considered for custody of [the child], I ask the Court to place custody of [the child] with [the maternal grandparents]. I believe that [the maternal grandparents] would provide a better home for [the child] for the following reasons:
"1. I am concerned about [the paternal grandparents'] enabling of [the father's] drug problem. [The father] has had a serious drug problem since he was in high school and his parents have done nothing to stop this. Instead, [the paternal grandparents] have provided for us, even when they knew we were using drugs and running from the police. As an example of [the paternal grandmother's] enabling behavior toward me, [she] has allowed me to have unsupervised access to [the child] in July and August of this year, even after Judge Sherrod specifically ordered that [the father] and I not have unsupervised access to [the child]. [The paternal grandparents] took [the father, the child] and me to Mobile, Alabama, where [the paternal grandfather] was working. [The paternal grandparents and the father] would go out to work during the day, and leave me alone with [the child] all day long. I did not see anything wrong with this at the time, but now I realize that it was not appropriate. At the time that [the paternal grandparents] took [the father, the child,] and me to Mobile, Alabama, (in July and August) of this year, [the father] and I had outstanding arrest warrants against us, and [the paternal grandparents] knew this. This is an example of [the paternal grandparents'] enabling behavior.
"2. I am concerned that if [the child] is placed with the [paternal grandparents], [the child] will never have a normal relationship with his brother. The [paternal grandparents] seldom see [the child's older brother], and they do not appear to care about him. If [the child] were placed with [the maternal grandparents], [the child] would have regular access to his brother. . . .
"3. I am concerned about the amount of alcohol consumed by [the paternal grandmother]. [The paternal grandmother] drinks a six pack to twelve pack of beer at one sitting, and she usually drinks this amount of beer four days out of the typical week. Alcohol is just another type of drug, and [the paternal grandmother] simply drinks too much to be an appropriate care giver for a minor child.
"4. I am concerned that [the paternal grandmother] smokes constantly around [the child] and cusses like a sailor in his presence. I do not want [the child] to grow up in that environment.
"5. The [paternal grandparents] do not go to church, and I would like for [the child] to grow up in a family that attends church.
"At the time that I signed the documents agreeing to place custody of [the child] with the [paternal grandparents], I was on drugs, I was running from the police, and I was trying to spite [the maternal grandfather]. After entering drug rehabilitation, I now know that I was not thinking clearly. I am requesting *297 that the Court allow me to withdraw the documents that I previously signed.
"For the reasons set forth above, I am requesting that the Court allow me to withdraw my consent to placing custody of [the child] with [the paternal grandparents]. I request that the Court grant me a continuance to allow me [to] complete my drug recovery program. If the Court will not allow me the opportunity to request custody of my child after completing my drug recovery program, then I request that [the child] be placed with [the maternal grandparents]."
At the beginning of the September 28, 2005, hearing, the juvenile court advised those present that the matters before the court were the maternal grandparents' motion to alter, amend, or vacate the juvenile court's judgment finding that the child was not dependent and their request for visitation rights in the event custody was awarded to the paternal grandparents. The juvenile court denied the maternal grandparents' motion without taking any evidence, stating that it did not consider the child to be a dependent child within the meaning of § 12-15-1(10). Rather, the juvenile court considered "th[e] child [to] ha[ve] been placed in capable hands by his biological parents." The juvenile court stated that, "based on the pleading that has been accorded before this court[, the child] was placed in the care of the paternal grandparents by his biological parent[s]." The juvenile court asked the father, "I believe you heard me say that this child, based on the pleadings was placed in the care of the paternal grandparents by you and by its mother; is that correct?"; the father responded, "Yes, ma'am."
Counsel for the maternal grandparents then advised the juvenile court that the mother had filed her "motion to withdraw consent for custody order, motion to continue, and affidavit" earlier that day. Counsel for the maternal grandparents requested that the juvenile court hear evidence regarding whether the child was dependent and regarding the suitability of the paternal grandparents as a placement for the child. The juvenile court then asked the father again, "You voluntarily, without any order placed this child in the care of [the paternal grandparents]?"; the father responded, "Yes, ma'am." At that point, the juvenile court denied the maternal grandparents' request to present evidence and stated that it considered the matter to be a custody battle between two sets of grandparents and that it was "without . . . legal authority to [decide the issue of] grandparent visitation." After the juvenile court made its ruling, the guardian ad litem opined that both sets of grandparents cared about the child and that the child would be well loved in either household. The maternal grandparents then made a proffer of evidence, and the hearing ended.
On September 28, 2005, the juvenile court entered an order bearing case no. JU-05-1596.01 only, stating in relevant part, as follows:
"This matter came before the Court upon the Joint Stipulation for Custody filed by [the paternal grandparents] and [the parents]. After review of the written agreement of [the paternal grandparents and the parents], the Court approves the . . . agreement and incorporates the . . . agreement into the Court's Order on Petition for Custody as if fully set out herein. Accordingly the Court hereby ORDERS, ADJUDGES and DECREES as follows:
"1. The Agreement . . . is ratified and adopted by the Court and the terms and conditions thereof are made a part[] of this custody order the same as if here written into, and it is ordered by the Court that the parties keep and obey the *298 terms thereof, subject to penalty as for contempt.
"2. This decree is a `CUSTODY DECREE' OR `CUSTODY DETERMINATION' under the Alabama enactment of the Uniform Child Custody Jurisdiction and Enforcement Act (U.C.C.J.E.A.), found at the Code of Alabama section 30-3B-101 et seq.
"3. This decree deviates from Rule 32 of the Alabama Rules of Judicial Administration in that it defers the imposition of a child support obligation. The Court finds said deviation to be fair and warranted due to the stated cause.
"4. Pursuant to the agreement . . ., a Continuing Child Support Withholding Order shall not be served on the [parents'] employer[s] at this time. Upon motion of any party to this action a Continuing Child Support Withholding Order shall be served upon either [parent's] employer[]."
(Capitalization in original). Also, on September 28, 2005, the juvenile court entered a separate order in case no. JU-05-1584.01 and case no. JU-05-1596.01, stating in relevant part, as follows:
"It is of the opinion of this Court that the biological parents willingly placed their child in the physical care of the paternal grandparents . . . and seek proper status for their placement. It is the finding of this Court that [the child] is NOT a dependent child. Request to Alter, Amend and/or Vacate this Court's order of September [27], 2005 is DENIED."
(Capitalization in original).
On October 11, 2005, the maternal grandparents filed a petition for a writ of mandamus, and on the same day the mother filed a notice of appeal. Because we conclude that the September 28, 2005, judgment was a final judgment,[5] we treat the maternal grandparents' petition for a writ of mandamus as an appeal. On November 15, 2005, this court entered an order consolidating the appeals.
"A finding of dependency must be supported by clear and convincing evidence. § 12-15-65(f)[, Ala.Code 1975]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court's ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep't of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep't of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996)."
J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004). However,
"where the question presented on appeal is whether the trial court correctly applied the law, the ore tenus rule has no application. Ex parte Perkins, 646 So.2d 46 (Ala.1994). Where the issue *299 presented is a question of law, this court's review is de novo and no presumption of correctness attaches to the trial court's judgment. Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala.2002)."
L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005).
In the instant case, the dispositive issue on appeal is whether the juvenile court committed reversible error by refusing to conduct a hearing on the merits regarding the maternal grandparents' allegations of the child's dependency.[6]
The maternal grandparents alleged in their April 19, 2005, petition that the child was dependent, and they set forth detailed facts in that petition and accompanying affidavits. Similarly, the paternal grandparents and the parents stipulated in their sworn April 26, 2005, pleading that the child was dependent and they likewise set forth detailed facts in that pleading and accompanying affidavit. "`When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code.'" W.T. v. State Dep't of Human Res., 707 So.2d 647, 650 (Ala.Civ.App.1997) (quoting C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (Thigpen, J., concurring specially in part and dissenting in part)).
We hold that in cases such as the one now before us in which there are allegations that the child is dependent, and in which the only sworn testimony before the juvenile court tends to establish that the child is dependent, the juvenile court commits reversible error by concluding that the child is not dependent without at least conducting an evidentiary hearing and affording the parties the opportunity to present evidence as to whether the child is a "dependent child" within the meaning of § 12-15-1(10). In such instances, § 12-15-65, Ala.Code 1975, clearly anticipates that the juvenile court will hold a hearing on the merits regarding the allegations of the child's dependency. See Ex parte Linnell, 484 So.2d 455, 457 (Ala.1986) (stating that "pursuant to § 12-15-65, a hearing on the merits of the petition itself is required to determine if the children are, in fact, dependent, and there must be a dispositional hearing to determine who should be given custody of the [dependent] children").
Therefore, we reverse the judgment of the juvenile court and remand the cause for the juvenile court to hold an evidentiary hearing and to decide the issue of dependency and related matters, if appropriate, and to enter a judgment accordingly.
The father's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and BRYAN, J., concur.
PITTMAN, J., concurs in the result, without writing.
MURDOCK, J., concurs in the judgment of reversal only, with writing.
MURDOCK, Judge, concurring in the judgment of reversal only.
Although I agree with the majority that the juvenile court's judgment should be reversed, I do so for a different reason. Concomitantly, while I also agree to remand the case, I disagree with the instructions given to the juvenile court on remand.
*300 The matters presented in this case, including the allegations in the maternal grandfather and maternal stepgrandmother's petition and the averments in the mother's September 2005 filing, raise genuine issues as to not only whether the mother and the father were unfit to have custody of their child but also whether their unfitness extended further to their ability to make a fit and proper decision as to who should have custody of their child. Accordingly, a conclusion that, as a matter of law, the child is not dependent, which the juvenile court necessarily made when it decided the case without receiving evidence, cannot be sustained on the ground cited by the juvenile court, i.e., that the parents had chosen to place the child with the paternal grandparents and therefore the child was not in need of care or supervision by the State. See Ala.Code 1975, § 12-15-1(10)n. For that reason alone, I agree that the judgment of the juvenile court must be reversed.
I do not agree, however, with the instruction in the main opinion for the juvenile court, on remand, to take evidence on the issue of dependency. Despite the allegations in the maternal grandfather and maternal stepgrandmother's "Petition for Legal and Physical Custody" and their subsequent filings with the juvenile court, they obviously do not contend that they are not fit and proper custodians for the child. Indeed, they seek custody of the child. The paternal grandparents also seek custody of the child, asserting that they too are fit and proper custodians for the child. Neither set of grandparents contends that the child is in need of the care or supervision of the State, as required by § 12-15-1(10)n. in defining a "dependent child." See also Ala.Code 1975, § 12-15-52(c)(1) ("The petition shall set forth with specificity . . . [t]he facts constituting the dependency . . . and that the child is in need of supervision, treatment, rehabilitation, care or the protection of the state, as the case may be."). Rather, both sets of grandparents contend that the child is simply in need of care or supervision by them. Thus, this controversy is in the nature of a custody dispute between two sets of prospective custodians, both of whom allege themselves to be fit and proper custodians for the child, and both of whom "concede" or allege that the parents are not fit and proper custodians. See Ex parte Terry, 494 So.2d 628 (Ala. 1986).
The juvenile court is a court of limited jurisdiction. See Ala.Code 1975, § 12-15-30. As to dependency proceedings, the juvenile court is authorized to enter a dispositional order that restricts a parent's custodial rights only when the child is a dependent child. See Ala.Code 1975, §§ 12-15-65(d), 12-15-65(f), and 12-15-71(a). In particular, the last sentence of § 12-15-65(d) requires the juvenile court to dismiss a dependency petition when it finds that the allegations of the petition have not been established. As noted above, neither the petitions in the present case nor the other portions of the record relied on by the mother, the maternal grandfather, and the maternal stepgrand-mother appear to suggest that the child at issue is in fact in need of the State's care or supervision or that any party desires for the State to assume or oversee the care or supervision of the child for even a limited period of time while the question of who a fit and proper custodian is determined. Instead, this proceeding is in the nature of a custody case that does not belong before the juvenile court, which the juvenile court correctly noted during the September 2005 hearing.[7]
*301 Based on the foregoing, I would reverse the trial court's judgment, but I would remand the case to the trial court for it to dismiss the case because, under the circumstances presented, it has no authority to enter a judgment awarding custody of the child to anyone.
NOTES
[1] The maternal grandparents actually filed two pleadings on April 19, 2005one styled "petition for legal and physical custody and request for pendente lite relief" and one styled "motion for pendente lite relief."
[2] Along with the "joint stipulation," the paternal grandparents submitted an affidavit of their own. In the affidavit, the paternal grandparents restated some of the facts in the "joint stipulation" and further stated that they had "a suitable home and [were] financially capable of caring for the child."
[3] The record reflects that on December 22, 2005, the juvenile court granted the maternal grandparents' December 20, 2005, motion to supplement the record.
[4] Also, on September 27, 2005, the juvenile court clerk entered a default against the parents in case no. JU-05-1584.01 and case no. JU-05-1596.01. However, the juvenile court did not enter default judgments against them.
[5] Although the juvenile court's September 28, 2005, judgment did not specifically address the maternal grandparents' request for visitation rights, we conclude that the juvenile court implicitly denied that claim in its September 28, 2005, judgment. In its September 28, 2005, judgment, the juvenile court declined to set aside its September 27, 2005, order. In its September 27, 2005, order, the juvenile court, after determining that the child was not a "dependent child," determined, among other things, that "[t]his Court is unable to establish a `right to reasonable visitation' for the [maternal] grandparents." In addition, during the September 28, 2005, hearing, the juvenile court, after stating that it did not find the child to be a "dependent child," stated that "[t]his court is without the legal authority to [address] grandparent visitation."
[6] Because we reverse the juvenile court's judgment as to this issue, it is not necessary for us to address the remaining issues on appeal.
[7] As the child's guardian ad litem commented during the hearing, "both the [paternal grandparents] and the [maternal grandfather and maternal stepgrandmother] generally care about their grandson. I think that both of them want what's best for him. Obviously, it's a difference of opinion of where that would be. But I feel secure that he would be well loved with either household."